901 A.2d 983

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Adam A. PAKACKI, Appellee.**

Supreme Court of Pennsylvania.

Argued Dec. 2, 2004.

Decided July 18, 2006.

Scott P. Rigdon, Esq., Hugh S. Rebert, Esq., Scott A. McCabe, for Commonwealth of Pennsylvania.

Bruce Piersoll Blocher, Esq., Tamara M. Cozzi, Esq., Mary M. Rhodes, Esq., Tyler James Larsen, Esq., York, for Adam A. Pakacki.

Before: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Justice EAKIN.

In this appeal, we are asked to determine whether appellee was subject to a custodial interrogation when he was stopped by an officer investigating a shooting, and whether the officer's subsequent seizure of a marijuana pipe was justified under the "plain feel" doctrine. Because appellee was not in custody and the seizure of the pipe was lawful, we reverse.

Pennsylvania State Police Trooper Christopher Keppel was in uniform, in a marked patrol car, when he was dispatched to investigate a shooting; he was given appellee's name as a potential suspect, and obtained a description of him. Trooper Keppel saw appellee and another man walking along a country road. With the lights on his patrol car flashing, Trooper Keppel pulled over, got out, called appellee over, asked him if he had any weapons, drugs, or needles, and told him that, for the safety of both of them, he was going to pat him down to ensure he had no weapons.

As he approached, the trooper smelled marijuana emanating from appellee. He patted down appellee and felt what, based on his past experience, he believed to be a marijuana pipe. He asked appellee what was in his pocket, and appellee told him, "I am not going to lie to you, it is a pipe." N.T. Suppression Hearing, 8/13/01, at 6. Trooper Keppel asked appellee to remove the pipe, which appellee did, and placed him under arrest for possession of drug paraphernalia.

Prior to trial, appellee moved to suppress the pipe and his statement, arguing both were the product of an unlawful search and seizure. The suppression court denied the motion, and following a bench trial, appellee was convicted and sentenced to 12 months probation. He appealed to the Superior Court, arguing the trial court should have found: Trooper Keppel conducted an unlawful stop and frisk of appellee,

violated the plain feel doctrine,[1] and violated appellee's constitutional rights by questioning him without first giving him *Miranda*[2] warnings.

The Superior Court concluded "there were sufficient articulable facts to support a reasonable suspicion that criminal activity was afoot such that Trooper Keppel's stop and frisk of [appellee] was justified." *Commonwealth v. Pakacki*, 2003 WL 21648773, No. 1694 MDA 2001, unpublished memorandum at 4 (Pa.Super. filed April 8, 2003). However, a majority of the panel determined the incriminating nature of the pipe was not immediately apparent to the trooper, as evidenced by the trooper's question to appellee about what was in his pocket, and therefore, seizure of the pipe was not justified under the plain feel doctrine. *Id.*, at 5. The court further held appellee was in custody, such that *Miranda* warnings were required before Trooper Keppel asked him what was in his pocket. *Id.*, at 8–9. Accordingly, the court vacated appellee's judgment of sentence, holding appellee's statement and the pipe were unlawfully obtained and should have been suppressed. *Id.*, at 9.

The Commonwealth sought allowance of appeal, which we granted, to determine:

1. Whether the Superior Court erred when it determined appellee was subject to a custodial interrogation.

2. Whether the Superior Court erred when it determined the trooper's seizure of the pipe was not justified under the plain feel doctrine.

■ Our standard of review in suppression matters is well settled. "[W]e must determine whether the factual findings [of the suppression court] are supported by the record and,

---

1. Adopted by the United States Supreme Court in *Minnesota v. Dickerson*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), the plain feel doctrine provides a police officer may properly seize non-threatening contraband "plainly felt" during a *Terry* frisk for weapons; in such instances, "seizure [is] justified by the same practical considerations that inhere in the plain-view context." *Id.*, at 375–76, 113 S.Ct. 2130.

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

assuming there is support in the record, we are bound by the facts and may reverse if the legal conclusions drawn from those facts are in error." *Commonwealth v. Shiflet,* 431 Pa.Super. 444, 636 A.2d 1169, 1170 (1994).

The Commonwealth first argues appellee was not subject to custodial interrogation when Trooper Keppel asked what was in his pocket; therefore, the absence of *Miranda* warnings did not render appellee's statement inadmissible. Commonwealth's Brief, at 14–15. Appellee counters that he was neither free to leave, nor to ignore the trooper's question, which the trooper should have known was likely to elicit an incriminating response; therefore, this interaction was a custodial interrogation. Appellee's Brief, at 10.

The Superior Court, in concluding appellee was in custody, relied on *Commonwealth v. Ingram,* 814 A.2d 264 (Pa.Super.2002), in which police received a call that the defendant was in possession of a stolen car and a gun; the dispatch also gave his location. Three police vehicles arrived at that location. Two officers asked to speak to the defendant about the unauthorized use of a vehicle. They informed the defendant that they would need to pat him down first and asked him to place his hands on the vehicle and spread his legs; he complied. The officer who conducted the pat-down felt an object in the defendant's left front pants pocket; he asked what it was, and the defendant responded it was "chronic," which the officer knew to be a street term for marijuana. The officer removed the marijuana and arrested the defendant. During the search incident to the arrest, the officer found more marijuana and a gun.

On appeal to the Superior Court, the defendant argued the drugs, as well as his statement to the officer, should have been suppressed because the search was unlawful. Although the Superior Court concluded there was reasonable suspicion to support the initial stop and frisk of the defendant, *id.,* at 270, it held the officer's question about the object in the defendant's pocket during the pat-down constituted custodial interrogation because: 1) under the circumstances, the defendant

■■■■

could reasonably believe his freedom of action was restricted, *id.*, at 270–71 (citing *Commonwealth v. Gonzalez*, 519 Pa. 116, 546 A.2d 26, 29 (1988)), and 2) the officer should have known his question regarding the nature of the object was reasonably likely to elicit an incriminating response from the defendant, *id.*, at 271 (citing *Commonwealth v. Hughes*, 536 Pa. 355, 639 A.2d 763, 771 (1994)). Thus, the court concluded that because the defendant was not given *Miranda* warnings, the drugs and his statement were not lawfully obtained.[3] *Id.*

In the present case, the Superior Court analogized *Ingram,* concluding appellee could have reasonably believed his freedom was restricted, and therefore he was in custody when the trooper inquired as to the contents of his pocket. As the trooper should have known his question was reasonably likely to elicit an incriminating response, appellee was subject to custodial interrogation.

■■■ In determining whether appellee was in custody, we note that Fourth Amendment jurisprudence has led to the development of three categories of interactions between citizens and the police. The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. *See Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Florida v. Bostick,* 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. *See Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Finally, an arrest or "custodial detention" must be supported by probable cause. *See Dunaway v. New York,* 442 U.S. 200, 99

---

3. Ultimately, the court held the denial of the defendant's suppression motion was proper under the doctrine of inevitable discovery. *Id.*, at 272. Here, the issue of inevitable discovery has not been raised, and the facts do not indicate it would apply.

S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Commonwealth v. Rodriguez,* 532 Pa. 62, 614 A.2d 1378 (1992).

*Commonwealth v. Ellis,* 541 Pa. 285, 662 A.2d 1043, 1047–48 (1995) (footnote and parallel citations omitted).

 The key difference between an investigative detention and a custodial one is that the latter "involve[s] such coercive conditions as to constitute the functional equivalent of an arrest." *Id.,* at 1047. In determining whether an encounter with the police is custodial, "[t]he standard ... is an objective one, with due consideration given to the reasonable impression conveyed to the person interrogated rather than the strictly subjective view of the troopers or the person being seized ..." and "must be determined with reference to the totality of the circumstances." *Commonwealth v. Edmiston,* 535 Pa. 210, 634 A.2d 1078, 1085–86 (1993). *Miranda* warnings are required only when a suspect is in custody. *Commonwealth v. Ford,* 539 Pa. 85, 650 A.2d 433, 439 (1994). As this Court has noted:

> A person is in custody for *Miranda* purposes only when he "is physically denied his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation." *Commonwealth v. Johnson,* 556 Pa. 216, 727 A.2d 1089, 1100 (1999). The U.S. Supreme Court has elaborated that, in determining whether an individual was in custody, the "ultimate inquiry is ... whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *Stansbury v. California,* 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994).

*Commonwealth v. Boczkowski,* 577 Pa. 421, 846 A.2d 75, 90 (2004) (footnote and parallel citations omitted).

 The detention to which appellee was subjected was not so coercive "as to constitute the functional equivalent of an arrest." *Ellis,* at 1047. Not every detention is custodial for *Miranda* purposes, and the situation here was an investigation based on reasonable suspicion, as delineated by *Terry.* In a

*Terry* situation, the officer possesses reasonable suspicion that criminal activity is afoot, and is thereby justified in briefly detaining the suspect in order to investigate. *See Commonwealth v. E.M.*, 558 Pa. 16, 735 A.2d 654, 659 (1999) (officer may conduct brief investigatory stop of individual if officer observes unusual conduct which leads him to reasonably conclude, in light of his experience, that criminal activity may be afoot). If, during this stop, the officer observes conduct which leads him to believe the suspect may be armed and dangerous, the officer may pat down the suspect's outer garments for weapons. *Id.* If no weapons are found, the suspect is free to leave if the officer concludes he is not involved in any criminal activity.[4]

Here, Trooper Keppel had information that appellee may have been involved in a shooting, and when he stopped appellee, he understandably stated he was going to frisk him for weapons as a safety measure. This interaction was the classic scenario contemplated by *Terry*[5] and did not constitute custody; after the frisk and a "moderate number of questions" about the shooting, appellee would have been free to leave, had the trooper not smelled marijuana and felt the pipe. This was not the functional equivalent of an arrest, and the Superior Court's holding suggests that any pat-down search places a suspect in custody, which is clearly not the law. *See Ellis*, at 1047–48 (investigative detention is not functional equivalent of arrest); *see also Berkemer*, at 440, 104 S.Ct. 3138 ("The comparatively nonthreatening character of [investigative] detentions of this sort explains the absence of any suggestion in our opinions that *Terry* stops are subject to the dictates of *Miranda*.") Thus, we hold appellee was not in custody so as

4. In a *Terry* stop, "the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obliged to respond. And, unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released." *Berkemer v. McCarty*, 468 U.S. 420, 439–40, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (footnote omitted).

5. As the suppression court noted, "We just flat out believe that this is the type of scenario that is considered in *Terry v. Ohio* ...." N.T. Suppression Hearing, 8/13/01, at 25.

to require *Miranda* warnings before the officer asked him about the object in his pocket.[6]

 The Commonwealth further challenges the Superior Court's holding that the trooper violated the plain feel doctrine because the incriminating nature of the marijuana pipe was not immediately apparent, as evidenced by the trooper's question to appellee concerning the nature of the object.[7]

 Under the plain feel doctrine,

a police officer may seize non-threatening contraband detected through the officer's sense of touch during a *Terry* frisk if the officer is lawfully in a position to detect the presence of contraband, the incriminating nature of the contraband is immediately apparent from its tactile impression and the officer has a lawful right of access to the object. *Dickerson*, 508 U.S. at 373–75, 113 S.Ct. 2130.[T]he plain feel doctrine is only applicable where the officer conducting the frisk feels an object whose mass or contour makes its criminal character immediately apparent. Immediately apparent means that the officer readily perceives, without further exploration or searching, that what he is feeling is contraband. If, after feeling the object, the officer lacks probable cause to believe that the object is contraband without conducting some further search, the immediately apparent requirement has not been met and the plain feel doctrine cannot justify the seizure of the object.

*Commonwealth v. Stevenson*, 560 Pa. 345, 744 A.2d 1261, 1265 (2000) (citations and parallel citation omitted).

**6.** Because we hold appellee was not in custody, we need not address whether the question about the pipe constituted interrogation for *Miranda* purposes; however, we note that the officer knew what the object was from feeling it. *See* N.T. Suppression Hearing, 8/13/01, at 6–7. Therefore, this case is distinguishable from *Ingram*, where there was no testimony the officer knew of the nature of the contraband before the question.

**7.** Although the officer would have had probable cause to arrest appellee when appellee stated he had a marijuana pipe and pulled it out of his pocket, the officer testified he knew what the object was as soon as he felt it, prior to appellee's admission. Therefore, in order to determine whether the officer had probable cause to arrest appellee and seize the pipe, we must address the plain feel issue.

The Commonwealth points to the suppression court's crediting the officer's testimony that, based on his experience, the object felt like a pipe; thus, the Commonwealth argues the Superior Court erred by overturning the suppression court's factual finding that the nature of the pipe was immediately apparent to the trooper. Commonwealth's Brief, at 12. Appellee argues the trooper did not articulate the details which led him to conclude the object was a pipe, such as the shape or contour of the object; therefore, the trooper's testimony was not specific enough to establish how the nature of the pipe was immediately apparent to him. Appellee's Brief, at 8–9.

The suppression court specifically found:

The testimony before the Court, which we do accept as true, is that upon the pat-down search for weapons, the trooper felt a pipe, which he recognized, based on his experience, as being a drug pipe. We will accept that testimony, which does fall within the plain feel doctrine. There is no testimony that the trooper had to manipulate the object felt in the pocket or otherwise do anything but feel it. This we find to be the case.

N.T. Suppression Hearing, 8/13/01, at 25.

Having reviewed the record, we conclude it supports this factual finding by the suppression court. Trooper Keppel, having five years' experience as a state trooper, noticed the smell of marijuana coming from appellee as he approached him. During the lawful pat-down, the trooper felt an object which he knew from his experience in law enforcement to be a marijuana pipe. Under the totality of the circumstances, the incriminating nature of the pipe was immediately apparent to Trooper Keppel, who had a lawful right of access to it. Based on these facts, no additional testimony was necessary to describe the pipe, and the Superior Court erred in concluding the nature of the contraband was not immediately apparent to the trooper. Accordingly, we reverse the order vacating appellee's judgment of sentence, and we reinstate the judgment of sentence.

Order reversed; judgment of sentence reinstated. Jurisdiction relinquished.

Justice CASTILLE, Justice NEWMAN and Justice SAYLOR join the opinion.

Former Justice NIGRO did not participate in the decision in this matter.

Justice BAER files a concurring opinion in which Chief Justice CAPPY joins.

Justice BAER, concurring.

Although I join in full the Majority's conclusion that the Superior Court erred in reversing the trial court's denial of the suppression motion at issue, I respectfully choose a different path to reach that outcome. Like the Majority, I agree that the initial stop and frisk was supported by reasonable suspicion based on the information the trooper received prior to approaching Appellant. Additionally, I join the Majority's conclusion that the record before the suppression court supports that court's conclusion that the incriminating nature of the pipe was immediately apparent to the trooper under the plain feel doctrine. N.T., 8/13/01, at 25 ("The testimony before the Court, which we accept as true, is that upon the pat-down search for weapons, the trooper felt a pipe, which he recognized, based on his experience, as being a drug pipe."). Accordingly, like the Majority, I would hold the pipe admissible pursuant to the plain feel doctrine and find the accumulated evidence sufficient to support Appellant's conviction for possession with intent to use drug paraphernalia. *See* 35 P.S. § 780–113(a)(32).

I diverge from the Majority only to the extent it conclusively holds that the incident subsequent to the initial stop and frisk did not constitute a custodial detention and interrogation implicating *Miranda*, as I believe the relevant inquiry into the admissibility of Appellant's statement, as opposed to the pipe, requires a discussion of the impact of the trooper's question concerning the contents of Appellant's pocket. In a footnote,

the Majority states that "we need not address whether the question about the pipe constituted interrogation" based on the prior conclusion that Appellant was not in custody prior to the trooper's question. Maj. Op. 587 Pa. at 520–21 n. 6, 901 A.2d at 988–89 n. 6. I respectfully differ as I believe a colorable argument can be made that once the officer knew, *via* plain feel, that the Appellant had contraband in his pocket and the Appellant presumably knew that the officer had felt the pipe, the incident transformed into a custodial detention involving coercive conditions under which the Appellant could reasonably believe that his freedom of action or movement was restricted. *See Commonwealth v. Gonzalez,* 519 Pa. 116, 546 A.2d 26, 29 (1988), *Commonwealth v. Boczkowski,* 577 Pa. 421, 846 A.2d 75, 90 (2004) ("The question of custody is an objective one, focusing on the totality of the circumstance, with due consideration given to the reasonable impression conveyed upon the person being questioned."). Under the totality of the circumstances, it is then reasonable to assume that a question concerning the object, known by both the trooper and Appellant to be contraband, was likely to elicit an incriminating response. *See Commonwealth v. Hughes,* 536 Pa. 355, 639 A.2d 763, 771 (1994) ("Interrogation has been held to encompass not only express questioning, but also any words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating statement."). If we were to conclude that a custodial interrogation occurred, any subsequent statement such as that given by Appellant would be inadmissible absent duly administered *Miranda* warnings. *See Commonwealth v. Gwynn,* 555 Pa. 86, 723 A.2d 143, 149 (1998) ("*Miranda* warnings are required where a suspect is subject to custodial interrogation.").

Regardless of my conclusion in this regard, even if Appellant's statement in response to the officer's question was admitted improperly, the error would be harmless given the proper admissibility of the pipe under the plain feel doctrine. While Appellant argues that the pipe would be barred as the fruit of the poisonous tree, such assertion lacks merit given that the pipe was fully admissible under the plain feel doctrine

prior to the trooper's question. *Commonwealth v. Stevenson*, 560 Pa. 345, 744 A.2d 1261, 1265 (2000) (acknowledging that under the plain feel doctrine "a police officer may seize non-threatening contraband detected through the officer's sense of touch during a *Terry* frisk if the officer is lawfully in a position to detect the presence of contraband, the incriminating nature of the contraband is immediately apparent from its tactile impression and the officer has a lawful right of access to the object.").

Accordingly, I, like the Majority, would reverse the decision of the Superior Court.

Chief Justice CAPPY joins this opinion.