**In re Interest of McClain**

C.P. of Lawrence County, no. 99 of 2010, JUV.

*Luanne Parkonen, assistant district attorney,* for Commonwealth.

*Kenneth A. Kasenter,* for minor child.

HODGE, *J.,* October 29, 2010—Before the court is a motion to suppress filed on behalf of the minor, Nigel C. McClain (hereinafter referred to as "the juvenile"), in which counsel for the juvenile contends that after an initial observation, Ellwood City Police Officer, Brian Damon, Sr., conducted an unwarranted search of the juvenile and seizure from his person.

The juvenile is charged with one count of possession of a small amount of marijuana (35 Pa.C.S.A. 780-113(31)) and one count of public drunkenness (18 Pa.C.S.A. 5505). The factual background of this case can be properly summarized as follows:

On June 9, 2010, Officer Damon responded to a police call made by Cindy Smith of 503 Beaver Avenue. Ms. Smith contacted the police because people were currently hanging out between the buildings of Oliver's Pub without permission. Her concerns were based on the fact that the pub had recently been experiencing damage to its property as a result of this type of behavior. When Officer Damon arrived at this location and while he was still seated in his police car, he shined his flashlight down the alleyway between the buildings of Oliver's Pub. In doing so, Officer Damon observed the juvenile, Nigel C. McClain, making out with another individual on the fire escape of the building. Officer Damon then exited his vehicle to approach the individuals. As he walked up to them, he detected a strong odor of marijuana in the air. Officer Damon questioned the individuals about the smell of marijuana, and both replied that neither of them was smoking. Officer Damon proceeded to check the front

pocket of the juvenile's jeans and discovered a small amount of marijuana. Officer Damon then transported both individuals to the Ellwood City Police Department, where he contacted their parents.

Defense counsel now motions this court to suppress all evidence seized from the juvenile's person and argues that Officer Damon lacked any reasonable suspicion that criminal activity was occurring, and that Officer Damon was, therefore, unjustified in searching the juvenile's person.

Before disposing of defense counsel's motion, this court must first discuss the interaction occurring between the officer and the juvenile prior to the search and seizure taking place. Fourth Amendment jurisprudence has led to three categories of interactions between police officers and private citizens being identified by the Pennsylvania Supreme Court: 1) a mere encounter, which need not be supported by any level of suspicion; 2) an investigative detention, which must be supported by reasonable suspicion, as it subjects an individual to a stop and brief detentions, but does not function as the equivalent of an arrest; and 3) a custodial detention, which requires probable cause. *Commonwealth v. Pakacki*, 901 A.2d 983, 987 (Pa. 2006) (citing *Commonwealth v. Ellis*, 662 A.2d 1043 (Pa. 1995).

Interactions that result in a seizure taking place are classified as an investigative detention or a custodial detention. *Commonwealth v. Strickler*, 757 A.2d 884, 899 (Pa. 2000). The main difference between the two interactions is that an investigatory detention merely subjects a citizen to stop and undergo a brief period

of detention, when such a detention is supported by a reasonable suspicion that criminal activity is afoot. A custodial detention, however, is the functional equivalent of an arrest, and therefore, requires *Miranda* warnings. *Id., Pakacki*, 901 A.2d at 987.

In the case sub judice, the detention to which the juvenile was subjected was not so invasive as to constitute a reasonable belief that his freedom of action or movement was restricted, and therefore cannot be categorized as a custodial detention. *Commonwealth v. Ellis*, 662 A.2d 1043, 1047 (Pa. 1993). Upon arrival, Officer Damon fact observed two individuals in the alleyway. This was the very purpose for which he responded to the area, and accordingly, his belief that the situation required further investigation was reasonable. As Officer Damon approached the two juveniles, he detected a strong odor of marijuana in the air and questioned the juveniles about the smell. This interaction clearly constitutes an investigatory detention, and is the very type of detention previously justified by the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1 (1968). The court's decision in *Terry* resulted in such a detention becoming commonly known as a *Terry* stop. During a *Terry* stop, an officer possesses a reasonable suspicion that criminal activity is afoot, and is thereby justified in briefly detaining a suspect so that he may further inquire as to the situation. *Commonwealth v. E.M.*, 735 A.2d 654, 659 (Pa. 1990).

During this type of brief detention, an officer "may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." *Berkemer v. McCarty*, 468 U.S. 420, 439-40 (1984). An individual has no

obligation to respond, and if the individual's answers do not give the officer probable cause for arrest, the individual must be released. *Id.*

Here, Officer Damon did question the two juveniles about the blatant odor of marijuana in the air. However, the juveniles informed Officer Damon that they were not smoking. Regardless of their negative response to his question, Officer Damon proceeded to check their pockets. Considering that the juvenile responded to the Officer's Damon negatively, his reaction to subsequently search the juvenile's pocket was unwarranted.

Furthermore, Officer Damon failed to state in his investigation report that such a search was necessary for his safety or that he even believed that the juveniles were armed and dangerous. If an officer observes conduct which causes him to believe that the individual may be armed and dangerous, he may pat down the detainee's outer garments for weapons, but such a search cannot be initiated without such belief. *Commonwealth v. E.M.,* 735 A.2d at 659. The commonwealth did not offer the testimony of Officer Damon at the suppression hearing, and the court is unable to otherwise conclude that Officer Damon believed the juveniles to be armed or dangerous.

Even if Officer Damon took the necessary procedural precautions prior to searching the juvenile, the court believes Officer Damon clearly exceeded the limitations of the plain feel doctrine by checking inside the juvenile's pocket instead of initially conducting a pat down or frisk of his exterior clothing. As adopted by the United States Supreme Court in *Minnesota v. Dickerson,* 508 U.S.

366 (1993), the plain feel doctrine provides that a police officer may seize a non-threatening contraband, detected through the officer's sense of touch during a *Terry* frisk if the officer is lawfully in a position to detect the presence of contraband. Officer Damon's decision to check the juvenile's jean pockets without initially conducting a pat down or even inform the juvenile it was necessary for him to frisk the juvenile for safety precautions clearly violated the safeguards previously established by Fourth Amendment jurisprudence.

For the above stated reasons and after considering the totality of the situation, this court finds that these circumstances established an insufficient basis for Officer Damon to search the juvenile's pockets. The evidence seized from the juvenile's person must therefore be suppressed. Accordingly the court will enter the following order:

## ORDER

And now, October 29, 2010 this case being before the court on October 27, 2010 on a motion to suppress filed on behalf of Nigel C. McClain, and for the reasons set forth in the accompanying opinion, it is ordered and decreed that the juvenile's motion to suppress is granted and all evidence obtained by the commonwealth and seized as a result of the detention is suppressed and shall not be used against the juvenile in any proceedings in this case.

The office of the prothonotary shall serve copies of this order upon counsel of record and the Juvenile Probation Office of Lawrence County.