J-A06009-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JIMMY MONTALMONT, | |
| Appellant | No. 1689 EDA 2011 |

Appeal from the Judgment of Sentence Entered May 27, 2011
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):
CP-51-CR-0007754-2009
CP-51-CR-0007755-2009

BEFORE:  BENDER, P.J.E., PANELLA, J., and LAZARUS, J.

MEMORANDUM BY BENDER, P.J.E.                **FILED OCTOBER 15, 2014**

Appellant, Jimmy Montalmont, appeals from the judgment of sentence of two to four years' incarceration, followed by three years' probation, imposed after he was convicted, following a non-jury trial, of robbery, criminal conspiracy to commit robbery, theft by unlawful taking, receiving stolen property, possessing an instrument of crime (PIC), terroristic threats, and simple assault.  Appellant argues that the court erred by denying his pretrial motion to suppress evidence obtained during a search of his cell phone.  We are compelled to agree; therefore, we vacate Appellant's judgment of sentence and remand for a new trial.

Appellant was arrested and charged with various offenses in February of 2011 based on his involvement in robberies of pizza deliverymen.  Prior to trial, Appellant filed a motion to suppress, which the court denied.  After a

non-jury trial was conducted on May 27, 2011, Appellant was found guilty of the above-stated crimes. The court sentenced him that same day to an aggregate term of two to four years' imprisonment, followed by three years' probation. Appellant filed a timely notice of appeal. On September 2, 2011, he timely complied with the court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). For some reason not apparent in the record, the trial court did not issue a Rule 1925(a) opinion until May 15, 2013.

While Appellant's appeal was pending, he filed with this Court a *pro se* request for new counsel to represent him on appeal, claiming that his current counsel had been disbarred. After confirming that fact, this Court remanded Appellant's case and the trial court appointed a new attorney to represent Appellant. That attorney filed a brief on Appellant's behalf raising one issue for our review: "Whether the court erred in failing to grant the motion to suppress the physical evidence?" Appellant's Brief at 4.[1]

We begin by noting our standard of review of an order denying a motion to suppress evidence:

> In reviewing a trial court's denial of a motion to suppress, we determine whether the record supports its factual findings. We "consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. We are bound by

---

[1] The Commonwealth had until September 18, 2014, to file a new appellee's brief. No brief was filed as of that date. However, we will consider the arguments presented in the Commonwealth's original brief filed on February 7, 2014.

the suppression court's findings if they are supported by the record, and may only reverse the suppression court if the legal conclusions drawn from the findings are in error." In suppression hearings, "[t]he Commonwealth shall have the burden of going forward with the evidence and of establishing that challenged evidence was not obtained in violation of the defendant's rights."

*Commonwealth v. Thompson*, 939 A.2d 371, 375 (Pa. Super. 2007) (citations omitted).

Here, in Appellant's motion to suppress, he averred that police unlawfully detained him and conducted a warrantless search of a cell phone discovered in his possession. A hearing was conducted on Appellant's motion, at which the following pertinent evidence was presented. Officer Qasim Edwards testified that in February of 2009, he was investigating a string of robberies involving pizza deliverymen. N.T. Suppression Hearing, 5/16/11, at 7-8. As part of the investigation, police posted a flyer listing the phone number used by the suspected robbers. *Id.* at 9. The flyer also provided a description of the suspects, stating that they were "two unknown black males; No. 1 is 20 years, black jacket, blue jeans; No. 2 is a black male, 24 years, gray jacket, also wearing black masks." *Id.* at 10. On February 11, 2009, at approximately 9:40 p.m., Officer Edwards responded to a report from Allegro's Pizza that a delivery order had been placed from the phone number listed on the flyer. *Id. at 9.*

When Officer Edwards arrived at the restaurant, he was instructed by his sergeant to pose as a pizza deliveryman and go to 1933 North 52nd

- 3 -

Street, the address provided in the delivery order.[2]  *Id.* at 11.  Officer Edwards was dressed in plain clothes and was carrying a pizza box when he arrived at that address and knocked on the door.  *Id.* at 12-13.  Officer Edwards stood at the door for approximately two minutes, at which time he heard another officer at the scene, Sergeant Anthony Jackson, yell, "[w]e got him."  *Id.* at 13.  Officer Edwards subsequently observed Sergeant Jackson detaining two males, one of whom he identified at the suppression hearing as Appellant.  *Id.* at 14.

Sergeant Jackson testified that he also responded to Allegro's Pizza and then accompanied Officer Edwards to the 52nd Street residence.  *Id.* at 23, 35.  Sergeant Jackson was in uniform and was driving a marked patrol car.  *Id.* at 26.  The sergeant stated that he parked his vehicle on 52nd Street, got out, and "started walking up to the address where the delivery was supposed to take place" so he could "keep an eye … on Officer Edwards because he was going to actually walk up to the door to make the delivery…."  *Id.*  Sergeant Jackson described what occurred next, as follows:

> [Sergeant Jackson:] As I was walking up the street to keep an eye on Edwards, I saw two males come out of the driveway of Arlington Street.  They were coming out – it looked like they were going towards Officer Edwards.  They saw me and then they just started walking across the street, 52nd Street.
>
> [The Commonwealth:] And you were in uniform?

_____

[2] Testimony at the suppression hearing indicated that this was a  "[h]igh crime area" known for criminal activity involving drugs, robberies and "a lot of burglaries."  *Id.* at 42.

[Sergeant Jackson:] I was in full uniform, yes.

[The Commonwealth:] The driveway that you were talking about, is that the driveway for the area where – like the driveway by 1933 North 52nd Street?

[Sergeant Jackson:] That's correct. The address where the delivery was, it was a corner property, right on the corner of this rear driveway.

[The Commonwealth:] Did they come out before or after Officer Edwards knocked on the property?

[Sergeant Jackson:] They came out, I would say, afterwards because he was standing there, and then they started walking out the driveway, that's when I saw them and they, in turn, saw me.

*Id.* at 26-28. Sergeant Jackson also indicated that he saw Appellant

"fumbling around in his waist" as he walked. *Id.* at 32.

When asked to describe what happened next, Sergeant Jackson

stated:

[Sergeant Jackson:] As they walked across the street, I start[ed] walking across towards them and I called to them. I told them to stop. I wanted to talk to them.

[The Commonwealth:] What were your exact words, if you can recall?

[Sergeant Jackson:] Exactly? I don't know. Just, you know, [c]ome here. Yo, guys, hold up for a second, something to that effect.
…

[The Commonwealth:] And once you said, Yo, guys, come here, what did they do?

[Sergeant Jackson:] They both took off running. They started to run.

*Id.* at 28-29.

Sergeant Jackson stated that he gave chase after Appellant and his companion began running, and that he caught Appellant after a short distance. *Id.* at 29. At that time, he handcuffed Appellant "[f]or everyone's safety," and because he "didn't know what was going on yet and … why they ran." *Id.* at 30. Sergeant Jackson "[p]atted [Appellant] down for weapons…." *Id.* at 31. The sergeant did not find any weapons on Appellant's person. *Id.* Sergeant Jackson then "passed [Appellant] off to [other] officers[,]" who searched Appellant again before placing him in the patrol vehicle. *Id.* at 35-36. During this second pat-down, officers discovered and seized a cell phone from Appellant's person. *Id.* at 36-37. While this second pat-down was occurring, Sergeant Jackson searched an area of the ground where he believed Appellant had discarded something prior to running. *Id.* at 32. The sergeant discovered a cordless drill wrapped in a t-shirt in that area. *Id.* Sergeant Jackson testified that that item could have been used to "simulate … a gun." *Id.*

In regard to the second pat-down of Appellant's person and the discovery of his cell phone, Officer Melissa Martin indicated that she may have been the officer who conducted this pat-down, but she could not specifically recall. *Id.* at 44. In any event, Officer Martin stated that she and her partner, Officer Johnson, were the officers who recovered the cell phone from Appellant. *Id.* at 44. However, she could not "remember the circumstances of actually feeling or retrieving" the phone. *Id.* at 45.

Once the phone was recovered, it was handed over to Officer Edwards. *Id.* at 21. Officer Edwards stated that he "looked into the phone" and "saw the phone numbers of the pizza stores" that had been robbed, and also saw a "call to Allegro's Pizza that night[.]"[3] *Id.* at 14-15, 21. Officer Edwards' search of the phone also confirmed that Appellant's cell phone had "the same phone number that was used to commit the robberies…." *Id.* at 21. At this point, Appellant was placed under arrest. *Id.* at 33.

Based on this evidence, the trial court issued an order denying Appellant's motion to suppress. While the court did not draft an accompanying opinion explaining its rationale, in its Rule 1925(a) opinion, the court attempts to offer some insight into its reasoning. Unfortunately, the court's discussion is rather confusing. First, the court explains why officers had reasonable suspicion to stop Appellant. Trial Court Opinion (TCO), 5/15/13, at 5. However, the court does not discuss the validity of the pat-downs – or the seizure of Appellant's cell phone – which followed Appellant's detention. Instead, the court moves directly into a discussion of the "inevitable discovery doctrine," concluding that Appellant's cell phone would have been seized and searched incident to his lawful arrest. *Id.* at 6. Specifically, the court states that, "[a]lthough [Appellant's] phone was searched before he was under arrest, the [o]fficers had the requisite

_____

[3] Officer Edwards did not specifically describe what digital information he searched in Appellant's phone to confirm this information. However, Appellant testified that the officer "look[ed] at the numbers in [the phone's] call history." *Id.* at 51.

probable cause to arrest *based on the totality of the circumstances at the time that the search was conducted*, [and] as such[,] the phone would have been discovered in the search incident to arrest." **Id.** (emphasis added). Curiously, however, in describing the circumstances that provided officers with probable cause to arrest Appellant *prior to the search of his phone*, the court *includes* the fact that Appellant's cell phone "matched the phone [number] used in the commission of the crimes." **Id.** at 7.

The court's rationale for denying Appellant's motion to suppress is flawed in several respects. First, we agree with Appellant that even if the officers possessed reasonable suspicion to stop him and conduct a **Terry**[4] frisk of his person, the officers' seizure and search of the contents of Appellant's phone exceeded the scope of **Terry**. Our Supreme Court has stated:

> [T]he purpose of the frisk under **Terry** is not to discover evidence, but to allow the officer to pursue his investigation without fear of violence. In keeping with such purpose, the frisk must be limited to that necessary for the discovery of weapons. The United States Supreme Court has held, however, that an officer may also properly seize non-threatening contraband detected through the sense of touch during a protective frisk for weapons. In so holding, the Court adopted what it characterized as the plain feel doctrine….

*Commonwealth v. Zhahir*, 751 A.2d 1153, 1158-1159 (Pa. 2000).

Under the plain feel doctrine,

_____

[4] **Terry v. Ohio**, 392 U.S. 1 (1968).

a police officer may seize non-threatening contraband detected through the officer's sense of touch during a **Terry** frisk if the officer is lawfully in a position to detect the presence of contraband, the incriminating nature of the contraband is immediately apparent from its tactile impression and the officer has a lawful right of access to the object. **[T]he plain feel doctrine is only applicable where the officer conducting the frisk feels an object whose mass or contour makes its criminal character immediately apparent. Immediately apparent means that the officer readily perceives, without further exploration or searching, that what he is feeling is contraband.** If, after feeling the object, the officer lacks probable cause to believe that the object is contraband without conducting some further search, the immediately apparent requirement has not been met and the plain feel doctrine cannot justify the seizure of the object.

**Commonwealth v. Pakacki**, 901 A.2d 983, 989 (Pa. 2006) (emphasis added) (quoting **Commonwealth v. Stevenson**, 744 A.2d 1261, 1265 (Pa. 2000)).

In this case, we cannot conclude that it was immediately apparent to the frisking officer(s) that Appellant's cell phone was contraband. Initially, there was no testimony from any officer who recalled conducting the pat-down, let alone any evidence of exactly why "the mass or contour" of Appellant's phone made "its criminal character immediately apparent." **Id.** Nevertheless, it is clear that the cell phone, in and of itself, was not obviously criminal in nature. While it is true that the officers knew that a cell phone had been used to place the delivery calls just prior to the robberies, it was not immediately apparent from the plain feel of Appellant's cell phone that *it* was the phone used to place those calls. Instead, the officers only became aware of that fact after "further exploration or

searching" of the phone. *Pakacki*, 901 A.2d at 989. Consequently, the plain feel doctrine was not applicable in this case, and the seizure and search of Appellant's phone exceeded the lawful scope of *Terry*.

Nevertheless, we acknowledge (as does Appellant) that "[w]hen the scope of a *Terry* search is exceeded, this alone does not automatically exclude the evidence seized from the illegal search." *Commonwealth v. Ingram*, 814 A.2d 264, 272 (Pa. Super. 2002). Instead, such evidence may still be admissible pursuant to the inevitable discovery doctrine, which provides:

> [E]vidence which would have been discovered was sufficiently purged of the original illegality to allow admission of the evidence.... [I]mplicit in this doctrine is the fact that the evidence would have been discovered despite the initial illegality.
>
> If the prosecution can establish by a preponderance of the evidence that the illegally obtained evidence ultimately or inevitably would have been discovered by lawful means, the evidence is admissible. The purpose of the inevitable discovery rule is to block setting aside convictions that would have been obtained without police misconduct.

*Commonwealth v. Bailey*, 986 A.2d 860, 862 (Pa. Super. 2009) (citation omitted).

Here, the trial court applied the inevitable discovery doctrine, concluding that there was probable cause to arrest Appellant and, as such, his cell phone would have been lawfully searched incident to that arrest. Initially, the court's analysis is flawed because it factored in the evidence *discovered on Appellant's phone* to determine that probable cause existed to

arrest him. In any event, even if we accepted the court's conclusion that there was probable cause to arrest Appellant prior to the search of his cell phone, the search of the contents of Appellant's phone would still have been unlawful. Recently, in **Riley v. California**, 134 S.Ct. 2473 (2014), the United States Supreme Court held that police generally may *not* conduct a warrantless search of digital information on a cell phone seized from an individual pursuant to a lawful arrest.[5] **Id.** at 2494-2495. In **Commonwealth v. Stem**, 2014 WL 3377450 (Pa. Super. 2014), this Court applied **Riley** to hold that the search of the contents of Stem's cell phone after his lawful arrest was unconstitutional.[6] Under **Riley** and **Stem**, it is

_____

[5] Especially pertinent to the instant case, the **Riley** Court also rejected the government's contention "that officers should always be able to search a phone's call log…." **Id.** at 2492.

[6] We acknowledge that **Riley** and **Stem** were decided during the pendency of this appeal. However,

> [t]he general rule followed in Pennsylvania is that we apply the law in effect at the time of the appellate decision. **Commonwealth v. Cabeza**, 503 Pa. 228, 469 A.2d 146 (1983). This principle applies with equal force to both civil and criminal proceedings. **Id.**; **Commonwealth v. Brown**, 494 Pa. 380, 431 A.2d 905 (1981). This means that we adhere to the principle that, "a party whose case is pending on direct appeal is entitled to the benefit of changes in law which occurs before the judgment becomes final." **Commonwealth v. Brown**, *supra*, 431 A.2d at 906–07, citing **August v. Stasak**, 492 Pa. 550, 424 A.2d 1328 (1981).

**Blackwell v. Com., State Ethics Com'n**, 527 Pa. 172, 182, 589 A.2d 1094, 1099 (Pa. 1991).

apparent that even had Appellant been lawfully arrested prior to the search of his phone, that search would still have been illegal without the officers' first obtaining a warrant. Thus, the inevitable discovery doctrine does not cure the otherwise illegal search of Appellant's phone during the **_Terry_** frisk.

For these reasons, we are compelled to conclude that the court should have granted Appellant's motion to suppress the evidence discovered on his cell phone. Accordingly, we vacate his judgment of sentence and remand for a new trial.[7]

Judgment of sentence vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/15/2014

---

[7] On September 3, 2014, Appellant's current counsel filed with this Court a "Motion to File Supplemental 1925b Statement of Matters," requesting permission to file a more concise Rule 1925(b) statement than that which was filed by Appellant's initial attorney. In light of our disposition herein, we deny that motion.