J-S34016-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                :   PENNSYLVANIA
                                :

            v.                         :
                                :

MARK A. HUNTER              :
                                :

           Appellant           :     No. 1291 WDA 2018

Appeal from the Judgment of Sentence Entered June 1, 2018
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s):  CP-65-CR-0003246-2017

BEFORE:   DUBOW, J., McLAUGHLIN, J., and COLINS*, J.

MEMORANDUM BY McLAUGHLIN, J.:       FILED OCTOBER 11, 2019

Mark A. Hunter appeals from the judgment of sentence entered following his jury conviction for fleeing or attempting to elude a police officer.[1] Hunter claims the trial court erred in denying both his motion to suppress and motion for recusal. We affirm.

The trial court aptly summarized the facts as follows:

Trooper Anthony Arbaczewski of the Pennsylvania State Police testified that on February 13, 2017 at approximately 10:50 a.m., he was on duty in an unmarked police vehicle at the New Stanton Turnpike Interchange running license plates. He stated that the purpose in doing so is to identify operators with expired licenses or those without insurance. At some point, a white Mercede[s] Benz passed the trooper's vehicle, and the trooper ran the vehicle's plates. He stated that the driver, the lone occupant of

_____

*   Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S.A. § 3733(a).

the vehicle, "looked at me . . . like he was surprised to see me." Trooper Arbaczewski related that the vehicle was registered to Mark Hunter. His search also showed that [Hunter's] license was expired. The trooper retrieved [Hunter's] J-Net picture, which matched the driver's appearance. At that point, the trooper began to follow [Hunter's] vehicle. The trooper waited on the side of the road while [Hunter] proceeded to the cash lane of the interchange. At that point, the trooper testified:

> I'm parked parallel with the road, just sitting here, and [Hunter] comes out of the cash lane, looked to his right because I would be to his right, he was to my left, he makes eye contact with me again at that time and he begins to accelerate and I began to pull out to get behind him . . . He started driving faster than a normal driver would coming out of a toll plaza.

[Hunter] then proceeded to drive toward I-70, as the trooper followed him with his overhead lights and siren initiated. At that point, [Hunter] began to accelerate at a higher rate of speed, which the trooper estimated to be 75 m.p.h. [Hunter] then entered the left lane of I-70. Near the next exit for New Stanton, [Hunter] cut in front of a tractor trailer in the right lane, resulting in the truck driver blowing his horn. [Hunter] did not utilize a turn signal. [Hunter] proceed to take the New Stanton exit and drive through a solid red light onto Center Avenue. As [Hunter] began to approach a bridge, he passed another vehicle with oncoming traffic across a solid yellow line. At that point, [Hunter] was traveling approximately 50 m.p.h. in a 35 m.p.h. zone. The trooper began having concerns for both the public's safety as well as his own, and terminated the chase. He related to dispatch the description of the vehicle, the occupant's physical description, and license plate number, as well as the fact that [Hunter] failed to stop for the officer.

Trooper Ryan Marmol and another trooper responded to Trooper Arbaczewski's dispatch and related that they were patrolling the area for [Hunter's] vehicle. Approximately 5 minutes later, one of the troopers located [Hunter] and his vehicle. Trooper Arbaczewski then traveled to the location, and identified [Hunter] standing outside the vehicle. The trooper stated that [Hunter] was cooperative, and that he was not handcuffed or in any manner coerced to speak with officers. [T]he trooper also stated that their conversation lasted for approximately 5 minutes. Initially,

> [Hunter] related that he did not know he was being pulled over; later, he stated that he was having a bad day and was running late. He also stated that he had been cited for not having a license for years and that he could "no longer handle it." When asked where he was going, [Hunter] responded that he was "heading to the Connellsville/Uniontown area to meet some guys."

Trial Court Opinion ("TCO"), filed 11/30/18, at 2-4 (citations to notes of testimony omitted).

Prior to trial, Hunter filed a motion to suppress "claiming there was no reasonable suspicion or probable cause to stop the vehicle" and arguing that his statement should be suppressed because "[Hunter] was not provided his Miranda Warnings."[2] N.T., Pre-Trial Motions Hearing ("Pre-Trial"), 1/2/18, at 3. The trial court denied the motion concluding:

> First of all, I did find the trooper's testimony to be credible and I have determined that the trooper had reasonable suspicion to attempt to pull [Hunter] over. [Hunter] clearly fled, and I find [Hunter] was not in custody. It was not a custodial interrogation. . . . However, whether the statements are used in trial or not used in trial it was no custodial interrogation.

Id. at 32.

On the day of trial, Hunter made an oral motion for recusal, which the trial court denied. Hunter then proceeded to trial and a jury found him guilty of the above referenced offense. The trial court, sitting without a jury, also found him guilty of numerous summary traffic offenses: drivers required to be licensed, driving while operating privilege is suspended or revoked, traffic-

_____

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

control signals, driving on roadways laned for traffic, turning movements and required signals, and driving vehicle at safe speed.[3]

The court sentenced Hunter to 60 days home electronic monitoring and a $1,000 fine for the suspended license charge, and two years of reporting probation for fleeing or attempting to elude. It imposed fines on some of the summary convictions and no further punishment on others. Hunter filed a post-sentence motion challenging the sufficiency of the evidence as well as the court's denial of his recusal motion. The trial court denied the motion and this timely appeal followed.

Hunter presents the following issues:

I.    Whether the court below erred in denying [Hunter's] motion to suppress his statement to police despite his being subject to custodial interrogation without the requisite warnings pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)[?]

II.   Whether the court below erred in failing to recuse itself, after giving evidence of having pre-judged the case at the time of the omnibus pretrial motions hearing[?]

Hunter's Br. at 4.

Our standard of review in addressing a challenge to the denial of a suppression motion is "limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." Commonwealth v. McClellan, 178 A.3d 874, 880 (Pa.Super. 2018) (quoting Commonwealth v. Jones, 121 A.3d

_____

[3] 75 Pa.C.S.A. §§ 1501(a), 1543(a), 3112(a)(3)(i), 3309(1), 3334(a), and 3361, respectively.

526-27 (Pa.Super. 2015)). Hunter maintains that his suppression motion should have been granted because he was subjected to a custodial interrogation but did not receive Miranda warnings.

"Miranda warnings are required only when a suspect is in custody." Commonwealth v. Pakacki, 901 A.2d 983, 987 (Pa. 2006) "A person is in custody for Miranda purposes only when he 'is physically denied his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation.'" Id. at 987-88 (quoting Commonwealth v. Boczkowski, 846 A.2d 75, 90 (Pa. 2004)). "Since an ordinary traffic stop is typically brief in duration and occurs in public view, such a stop is not custodial for Miranda purposes." Commonwealth v. Mannion, 725 A.2d 196, 202 (Pa.Super. 1999) (en banc). However, an ordinary traffic stop may become custodial in nature "when the stop involves coercive conditions, including, but not limited to, the suspect being forced into a patrol car and transported from the scene or being physically restrained." Id.

Here, Hunter maintains that he was in custody because, "[a]lthough he was not in handcuffs or in any enclosed space, no reasonable person would think that he had the freedom to walk away from the trooper under the circumstances presented." Hunter's Br. at 9. Specifically, he argues that Trooper Arbaczewski "acknowledged that Mr. Hunter was not free to leave and that he would likely have taken some sort of action had Mr. Hunter attempted to get into his vehicle and leave while he was speaking with him." Id.

This claim is meritless. Hunter was subjected to an ordinary traffic stop and there were no coercive conditions sufficient to make it the functional equivalent of an arrest. See Pakacki, 901 A.2d at 988 (concluding Miranda warnings not required where trooper stopped appellant to inquire about a shooting he allegedly was involved in, patted appellant for weapons and asked appellant a "moderate number of questions"). When the troopers finally located Hunter in the parking lot, Hunter had voluntarily stopped in the lot and was standing outside of his vehicle. The troopers did not draw their weapons, threaten Hunter, place him in handcuffs, or block his car from leaving. See N.T., Pre-Trial, at 12-13, 14-15, 21-22. Nor did they place him in the back of a police vehicle, tell him that he had to speak with them, or take him elsewhere to interview him. See id. at 15-16, 23.

While Trooper Arbaczewski testified that, in his opinion, Hunter "wasn't free to go[,]" that is not dispositive. Rather, the issue is whether the stop escalated to a full custodial detention. Because the conditions of the stop were not so coercive as to convert it into a custodial arrest, Trooper Arbaczewski did not need to give Hunter his Miranda warnings and the trial court did not abuse its discretion in denying Hunter's motion to suppress.

Next, Hunter claims the trial court erred in denying his motion to recuse. He argues that the trial court "should have recused itself as it had pre-judged Mr. Hunter's guilt on the lead charge." Hunter's Br. at 11. He bases this claim on the following comment by the trial court following its ruling on the

suppression motion: "The defendant clearly fled, and I find the defendant was not in custody." Id. at 10 (quoting N.T., Pre-Trial, at 31).

"[A] trial judge should recuse . . . whenever he [or she] has any doubt as to [his or her] ability to preside impartially in a criminal case or whenever he [or she] believes [his or her] impartiality can be reasonably questioned." Commonwealth v. Blakeney, 946 A.2d 645, 662 (Pa. 2008) (quoting Commonwealth v. Goodman, 311 A.2d 652, 654 (Pa. 1973)). "An appellate court presumes judges are fair and competent, and reviews the denial of a recusal motion for an abuse of discretion." In re Lokuta, 11 A.3d 427, 435 (Pa. 2011). Thus, the burden is on the appellant to establish that the trial court abused its discretion in denying the motion to recuse. See Commonwealth v. White, 734 A.2d 374, 384 (Pa. 1999).

Hunter fails to sustain his burden of proving that the trial court abused its discretion in denying his oral motion for the court to recuse. When the trial court denied Hunter's recusal motion, it explained that its comment about Hunter fleeing was "only in relation to determining the pretrial motions." TCO at 17. Additionally, it pointed out that it was not the fact finder at trial and therefore "it was the jury who had to make the ultimate determination" of whether Hunter actually fled from Trooper Arbaczewski. Id. The trial court did not abuse its discretion in refusing to recuse itself.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:   10/11/2019