**COMMONWEALTH of Pennsylvania,
Appellee,**

**v.**

**Harry L. BOLTON, Appellant.**

Superior Court of Pennsylvania.

Argued June 18, 2003.

Filed Aug. 25, 2003.

Robert T. Kane, Munhall, for appellant.

Kevin F. McCarthy, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

BEFORE: HUDOCK, LALLY–GREEN, and CAVANAUGH, JJ.

OPINION BY LALLY–GREEN, J.:

¶ 1 Appellant, Harry L. Bolton, appeals from the judgment of sentence entered on October 21, 2002, following his convictions for driving a vehicle without proper financial responsibility and driving on a DUI related license suspension.[1] We affirm.

¶ 2 The trial court stated the facts as follows:

> On April 24, 2000, [Appellant] was stopped by a police officer because he was allegedly driving with a suspended license plate. The officer then ascertained that [Appellant] was not in possession of his driver's license that had been suspended. Finally, [Appellant] was unable to demonstrate proof of insurance.
>
> [Appellant] testified that he was not driving his own vehicle at the time of the stop. [Appellant] acknowledged that his operating privileges had been suspended for driving under the influence of alcohol on a few occasions. In addition, he testified that since 1996, his driving privileges had not been restored.

Trial Court Opinion, 12/27/02, at 1–2.

¶ 3 On April 24, 2000, Appellant received a citation for driving without insurance coverage. On April 29, 2000, Appellant received a second citation via mail for driving under a DUI related license suspension. On June 24, 2002, Appellant pled guilty to the charge of driving without financial responsibility. He was tried on the remaining charge and adjudicated guilty of driving under a DUI-related license suspension. On October 21, 2002, Appellant was sentenced to serve 90 days of intermediate punishment with work re-lease and to pay a fine of $1,300.00 plus costs. This timely appeal followed.

¶ 4 Appellant presents one issue for our review:

> Whether the trial court erred in holding that the charging officer had probable cause to effectuate a traffic stop where he had not observed [that] Defendant had committed any violation of the traffic laws and was not engaged in a systematic program of checking vehicles for compliance with motor vehicle registration and financial responsibility of the laws?

Appellant's Brief at 3.

¶ 5 Our scope of review is limited to the determination of whether the trial court's findings are supported by competent evidence, whether any error of law occurred, and whether the trial court committed a manifest abuse of discretion. *Commonwealth v. Vetrini*, 734 A.2d 404, 406 (Pa.Super.1999).

¶ 6 Initially, we note that:

> State case law recognizes three categories of interaction between police officers and citizens, which include: (1) a mere encounter, or request for information, which need not be supported by any level of suspicion, but which carries no official compulsion to stop or to respond; (2) an investigative detention, which must be supported by reasonable suspicion as it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest; and (3) arrest or custodial detention, which must be supported by probable cause.

*Commonwealth v. Acosta*, 815 A.2d 1078, 1082 (Pa.Super.2003) (*en banc*).

---

1.  75 Pa.C.S.A. §§ 1786(f) and 1543(b), respectively.

¶ 7 Two competing interests guide the formulation of the laws governing state agents performing stops of vehicles on the road: (1) the Commonwealth's interest in protecting the safety of those who travel its highways and roads through the use of safety rules and regulations; and (2) the reasonable expectation of privacy by the individual. *Commonwealth v. Whitmyer*, 542 Pa. 545, 668 A.2d 1113, 1116–1117 (1995). "An individual operating or traveling in an automobile does not lose all reasonable expectation of privacy simply because the automobile and its use are subject to government regulation." *Delaware v. Prouse*, 440 U.S. 648, 662, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). Before the government may single out one automobile to stop, there must be specific facts justifying an intrusion of this sort. *Whitmyer*, 668 A.2d at 1115.

¶ 8 This Court has consistently found that a report from the National Crime Information Center ("NCIC") is sufficient to form reasonable and articulable grounds, *i.e.*, probable cause, that a crime is being committed or has been committed. *Commonwealth v. Cotton*, 740 A.2d 258, 264 (Pa.Super.1999) (an officer's reliance on hearsay information gathered from an NCIC radio report that appellant was wanted pursuant to two bench warrants was sufficient for probable cause); *Commonwealth v. Evans*, 343 Pa.Super. 118, 494 A.2d 383, 388 (1985) (an NCIC report that a vehicle was stolen and the occupants armed with weapons was sufficiently reliable for probable cause); *Commonwealth v. Riley*, 284 Pa.Super. 280, 425 A.2d 813, 816 (1981) (an officer could reasonably rely upon an NCIC report of an outstanding arrest warrant and juvenile detainer to provide the probable cause necessary for an arrest).

¶ 9 The Motor Vehicle Code authorizes police officers to stop vehicles pursuant to the following statute:

Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has articulable and reasonable grounds to suspect a violation of this title, he may stop a vehicle upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.A. § 6308(b).

¶ 10 Pursuant to the statute, police officers may stop vehicles under two circumstances: 1) as part of a systematic program; and 2) when the officer possesses articulable, reasonable grounds to suspect a violation of the Motor Vehicle Code. *Id.* The standard of suspicion of "articulable and reasonable grounds" is tantamount to probable cause. *Commonwealth v. Gleason*, 567 Pa. 111, 785 A.2d 983, 985 (2001).

¶ 11 The Motor Vehicle Code further provides that, "[n]o person shall drive or move and no owner shall knowingly permit to be driven or moved upon any highway any vehicle which is not registered in this Commonwealth..." 75 Pa.C.S.A. § 1301(a). Additionally, "[e]very motor vehicle of the type required to be registered under this title which is operated or currently registered shall be covered by financial responsibility." 75 Pa.C.S.A. § 1786(a).

¶ 12 Our review of the record reflects the following. The trial court found that on April 24, 2000, a police officer was traveling behind a vehicle operated by Appellant. Trial Court Opinion, 12/27/02, at 1. The officer ran the registration of the

vehicle through the mobile NCIC device in his police vehicle. N.T., 10/21/02, at 9. The computer indicated that the vehicle, though registered, lacked the proper financial responsibility as required by the Motor Vehicle Code. *Id.* The officer then stopped Appellant and further discovered through use of the NCIC computer that Appellant was operating the vehicle on a suspended license. *Id.*

¶ 13 Since NCIC reports can form the basis of probable cause, the officer had sufficient probable cause to stop Appellant when he learned through the NCIC report that the vehicle being driven by Appellant lacked proper financial responsibility. *Riley; Evans; Cotton.* Thus, the officer had specific articulable facts that led him to believe that a violation of the Motor Vehicle Code was occurring. *Id.* Given that Appellant was stopped with sufficient probable cause or reasonable and articulable grounds, the stop was legal and Appellant's constitutional rights were not infringed. 75 Pa.C.S.A. § 6308(b).

¶ 14 Appellant also argues that the stop was unconstitutional because the charging officer was not engaged in a systematic program of checking vehicles or drivers. However, the pertinent statute here provides police officers with two methods of justification of a stop: 1) sufficient articulable and reasonable grounds, *i.e.*, probable cause; or 2) a systematic program of vehicle and driver checks. *Id.* In light of the finding that the charging officer had sufficient probable cause or reasonable and articulable grounds for the stop, there is no need to evaluate whether the officer was engaged in a systematic program of vehicle and driver checks.

¶ 15 As to Appellant's contention that the charging officer must have some level of suspicion in order to run a license plate on the road through the NCIC computer, Appellant cites no authority to support this contention. Further, our review of the case law has found no support for this argument. Additionally, we fail to see the need for some level of suspicion to check a license plate which is clearly in plain view.

¶ 16 As the vehicle stop leading to Appellant's citations was proper, the trial court did not err or abuse its discretion.

¶ 17 Judgment of sentence affirmed.