J-A16001-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| STEVEN ALSTON, | |
| Appellee | No. 1469 EDA 2013 |

Appeal from the Order Entered May 1, 2013
in the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0015307-2012

BEFORE:  LAZARUS, J., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED AUGUST 17, 2015**

The Commonwealth appeals from the order of May 1, 2013, which granted the motion of Appellee, Steven Alston, to suppress.[1]  After review, we are constrained to reverse and remand.

We take the underlying facts and procedural history in this matter from the May 1, 2013 notes of testimony and our independent review of the certified record.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The Commonwealth may take an appeal of right from an order that does not end the entire case if it certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution.  **See** Pa.R.A.P. 311(d); **see also Commonwealth v. Torres**, 764 A.2d 532, 536 n.2 (Pa. 2001). The Commonwealth has included such a certification in this case.

On December 7, 2012, at approximately 9:50 p.m., Philadelphia Police Officer Colin Goshert and his partner, Officer Jeff Thompson, were on routine patrol when they observed Appellee's vehicle. (*See* N.T. Suppression Hearing, 5/01/13, at 4-5; *see also* Complaint, 12/08/12, at 1). The officers observed that the vehicle had dark tint on all the windows and the license plate lacked a registration sticker. (*See id.* at 5). Officer Goshert activated the lights and sirens of his marked police vehicle; when Appellee pulled his car over, both officers moved toward it on foot. (*See id.*).

Officer Goshert approached the driver's window and asked Appellee for his license, registration, certificate of insurance, and registration sticker. (*See id.*). Appellee provided all the requested documents and the officers returned to their police car. (*See id.* at 6). Officer Goshert then used various police databases to confirm the validity of Appellee's documents, the absence of outstanding warrants, and the status of any permits to carry a gun. (*See id.*). Officer Goshert testified that he always checks the gun license status of drivers as well as outstanding warrants because of safety concerns. (*See id.*). The check performed by Officer Goshert showed that Appellee had a license to carry that had been revoked. (*See id.*).

The officers reapproached Appellee and Officer Thompson asked him if he had a weapon. (*See id.*). Appellee stated that he had a gun in the back seat. (*See id.* at 7). Concerned about their safety, the officers asked Appellee to exit the car and when he did so, Officer Goshert recovered a

weapon from the back pouch behind the passenger seat. (***See id.***). The police arrested Appellee for carrying a firearm without a license and carrying a firearm in public in the city of Philadelphia.[2]

On May 1, 2013, the trial court held a hearing on Appellee's motion to suppress.[3] That same day, the trial court granted the motion. The instant, timely appeal followed.[4]

On appeal, the Commonwealth raises the following question for our review:

> Did the [trial] court erroneously suppress the evidence of [Appellee's] gun and statement to the police based on the court's mistaken belief that officers conducting a lawful nighttime traffic stop could not properly ask him whether he was armed without first giving him warnings pursuant to ***Miranda v. Arizona***, 384 U.S. 436 (1966), even though he was not in custody or interrogated?

(Commonwealth's Brief, at 4).

The Commonwealth challenges the trial court's grant of Appellee's motion to suppress. When the Commonwealth appeals from a suppression order, this Court follows a clearly defined scope and standard of review: we

---

[2] 18 Pa.C.S.A. §§ 6106(a)(1) and 6108, respectively.

[3] There is no written motion to suppress in the certified record or listed on the docket.

[4] Although not initially ordered to by the trial court, the Commonwealth filed a concise statement of errors complained of on appeal. ***See*** Pa.R.A.P. 1925(b). On September 23, 2014, the trial court issued an opinion. ***See*** Pa.R.A.P. 1925(a).

consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. *See Commonwealth v. Henry*, 943 A.2d 967, 969 (Pa. Super. 2008), *appeal denied*, 959 A.2d 928 (Pa. 2008). This Court must first determine whether the record supports the factual findings of the suppression court and then determine the reasonableness of the inferences and legal conclusions drawn from those findings. *See id.* Here, because our review of the record demonstrates that the inferences and legal conclusions that the trial court drew were not reasonable or legally correct, we are constrained to reverse.

On appeal, the Commonwealth argues that "the suppression court erred by adopting [Appellee's] theory that police performing a lawful, nighttime traffic stop could not ask him whether he had a gun without first giving him *Miranda* warnings." (Commonwealth's Brief, at 11). Initially, we note that this Court has held that there are three levels of interaction between citizens and police officers: (1) mere encounter, (2) investigative detention, and (3) custodial detention. *See Commonwealth v. Jones*, 874 A.2d 108, 116 (Pa. Super. 2005). Thus, we have stated:

> A mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond.
>
> In contrast, an investigative detention, by implication, carries an official compulsion to stop and respond, but the

detention is temporary, unless it results in the formation of probable cause for arrest, and does not possess the coercive conditions consistent with a formal arrest. Since this interaction has elements of official compulsion it requires reasonable suspicion of unlawful activity. In further contrast, a custodial detention occurs when the nature, duration and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest.

*Id.* (citation omitted). This Court has also stated that:

The numerous factors used to determine whether a detention has evolved into an arrest include the cause for the detention, the detention's length, the detention's location, whether the suspect was transported against his or her will, whether physical restraints were used, whether the police used or threatened force, and the character of the investigative methods used to confirm or dispel the suspicions of the police. Custodial interrogation has been defined as questioning initiated by the police after a person has been taken into custody or otherwise deprived of his or her freedom of action in any significant way. Further, an interrogation occurs when the police should know that their words or actions are reasonably likely to elicit an incriminating response from the suspect. ***Miranda*** warnings must precede a custodial interrogation.

***Commonwealth v. Clinton***, 905 A.2d 1026, 1032 (Pa. Super. 2006), *appeal denied*, 934 A.2d 71 (Pa. 2007) (internal quotation marks, emphasis, and citations omitted). It is long-settled that ***Miranda*** warnings are only required for the third-level interaction, custodial interrogation. ***See Commonwealth v. Smith***, 836 A.2d 5, 18 (Pa. 2003). However, equally settled law states that a motor vehicle stop is a second-level interaction, an investigative detention. ***See Clinton***, ***supra*** at 1030.

The courts have also plainly held that officer safety is a heightened concern during traffic stops. The United States Supreme Court has

- 5 -

emphasized that there is an "inordinate risk confronting an officer as he approaches a person seated in an automobile. According to one study, approximately 30% of police shootings occurred when a police officer approached a suspect seated in an automobile." *Pennsylvania v. Mimms*, 434 U.S. 106, 110 (1977) (internal quotation marks and citation omitted). In a recent decision, the Supreme Court reiterated that "[t]raffic stops are especially fraught with danger to police officers, so an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely." *Rodriguez v. United States*, 135 S.Ct. 1609, 1616 (2015) (internal quotation marks and citations omitted). The danger continues **throughout** the stop because "if the suspect is not placed under arrest, he will be permitted to reenter his automobile and he will then have access to any weapons inside." *Michigan v. Long*, 463 U.S. 1032, 1051-52 (1983) (citation omitted). Those concerns are even greater when the motor vehicle stop occurs at night. *See In re OJ*, 958 A.2d 561, 566 (Pa. Super. 2008), *appeal denied*, 989 A.2d 918 (Pa. 2010) (noting that nighttime "creates a heightened danger that an officer will not be able to view a suspect reaching for a weapon.").

Because of these valid safety concerns, police officers who conduct a traffic stop are entitled to require that the driver and any passengers step out of a vehicle "as a matter of course." *Commonwealth v. Campbell*, 862 A.2d 659, 663 (Pa. Super. 2004), *appeal denied*, 882 A.2d 1004 (Pa.

2005) (citations omitted). The police may do so "despite the lack of an articulable basis to believe that criminal activity if afoot or that the driver is armed and dangerous." ***Commonwealth v. Brown***, 654 A.2d 1096, 1100 (Pa. Super. 1995), *appeal denied*, 664 A.2d 972 (Pa. 1995) (citations omitted). "[T]he concern for **officer safety** [is so serious that it] outweighs the **minor intrusion** on drivers and passengers whose freedom of movement has already been curtailed by the traffic stop." ***Clinton***, ***supra*** at 1030 (citation omitted, emphases in original). Such minimal intrusions on privacy rights are permissible "because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office." ***California v. Carney***, 471 U.S. 386, 391 (1985).

Further, the courts have held that it is constitutionally permissible for the police to access databases to search criminal history, warrant status, and related information during a traffic stop, so long as it does not unreasonably extend the stop. ***See Rodriguez***, ***supra*** at 1615 (so long as it does not unreasonably extend stop, police officer may conduct "certain unrelated checks during an otherwise lawful traffic stop."); ***Clinton***, ***supra*** at 1030 (police may check or secure information they believe necessary to enforce provisions of Motor Vehicle Code); ***Commonwealth v. Bolton***, 831 A.2d 734, 737 (Pa. Super. 2003) (police officer does not need to have some level of suspicion prior to running license plate through the NCIC computer).

In the instant matter, the trial court found that there was "reasonable suspicion and probable cause" for the initial stop of the motor vehicle. (Trial Court Opinion, 9/23/14, at 4). However, the trial court then held that the police completed the stop once they "determined that [Appellee's] driver's license and insurance were current and valid. . . ." (**Id.**). The trial court continued that there was "no reasonable basis or cause for the officer to investigate, search, or inquire as to the [Appellee's] licensure status for a firearm." (**Id.**). The trial court also found that length of the interrogation supports a finding of custodial interrogation, as did "the investigative methods used by the officers[.]" (**Id.** at 5). The trial court fails to cite to any legal authority in support of these findings.

To begin with, we find that the trial court's conclusion that the police completed the traffic stop once Officer Goshert determined that Appellee's license and insurance were current and valid and that, therefore, running the weapons check created a custodial interrogation, is neither reasonable nor legally correct. (**See** Trial Ct. Op., 9/23/14, at 4). While our Supreme Court has not created a bright line rule as to when an initial valid traffic stops ends and thus new reasonable suspicion is necessary to support a continued detention, it has set forth certain factors for us to consider, including:

> . . . the existence and nature of any prior seizure; **whether there was a clear and expressed endpoint to any such prior detention**; the character of police presence and conduct in the encounter under review (for example—the number of officers, whether they were uniformed, whether police isolated subjects, physically touched them or directed their

> movements, the content or manner of interrogatories or statement. . . ); geographic, temporal and environmental elements associated with the encounter; and the presence or absence of express advice that the citizen-subject was free to decline the request for consent to search. In general, a full examination must be undertaken of all coercive aspects of the police/citizen interaction.

*Commonwealth v. Freeman*, 757 A.2d 903, 906-07 (Pa. 2000) (emphasis added, citation omitted).

In *Freeman*, *supra*, our Supreme Court found that a second, unlawful detention had occurred. *See id.* at 907-08. It stated that once the police gave the driver a written warning, returned her license and registration and told her she was free to leave, the stop had ended. *See id.* at 905, 907-08. Therefore, before returning to the vehicle, interrogating the driver, and obtaining her consent to search the vehicle, the police required new reasonable suspicion. *See id.*

In a recent decision, relying on *Freeman*, this Court held that the police had subjected the driver to a second, unlawful detention. *See Commonwealth v. Nguyen*, --- A.3d ---, 2015 WL 1883050, at **8-9 (Pa. Super. April 27, 2015). We held that, after the police officer issued a written warning, told the driver that the traffic stop was complete and he was free to go, the officer could not reenter his patrol vehicle, return to the driver, interrogate him and ask his consent to search the car absent additional reasonable suspicion. *See id.* **2, 8-9. We specifically stated that the officer had accomplished the purpose of the lawful detention

because he had issued a warning and told the driver he was free to go. **See id.** at *9.

Here, the trial court failed to undertake the full examination of the circumstances mandated by the **Freeman** Court. (**See** Trial Ct. Op., 9/23/14, at 4). Our review of the record demonstrates that there had not been a clear and expressed endpoint of the prior detention at the time highlighted by the trial court. (**See** N.T. Suppression Hearing, 5/01/13, at 6). Rather, Appellee was still detained pursuant to the lawful detention because, at the time Officer Goshert ran the gun license check, he had not returned Appellee's documents to him and still had the option of issuing a warning or citation to him. Thus, the trial court's holding that the traffic stop concluded after the police officer ran the driver's license check, is not supported by the record. **See Freeman**, **supra** at 907-08; **Nguyen**, **supra** at ** 8-9.

Further, the trial court's holdings that there was "no reasonable basis or cause for the officer to investigate, search, or inquire as to the [Appellee's] licensure status for a firearm[;]" and that the length of the interrogation supports a finding of custodial interrogation, as did "the investigative methods used by the officers[;]" cannot stand. (Trial Ct. Op., 9/23/14, at 4-5). We find this Court's decision in **Clinton**, **supra** to be instructive.

In **Clinton**, the police stopped a vehicle for failing to stop at a stop sign. **See Clinton**, **supra** at 1028. The police parked their unmarked vehicle, with lights and sirens, behind the defendant, and three police officers approached the car. **See id.** One of the officers asked for license and registration and then asked the defendant if he had a weapon or anything that the police should know about and the defendant admitted that he had marijuana. **See id.** This statement led to the search of the defendant's person and car and his subsequent arrest. **See id.** The trial court granted the defendant's motion to suppress concluding that, while the initial traffic stop was valid, the detective acted in a manner that was "inherently coercive with the aim of eliciting incriminating evidence without having advised [the defendant] of his rights against self-incrimination." **Id.** at 1029 (internal quotation marks and record citation omitted). On appeal, we disagreed.

In so doing, we reiterated that a traffic stop constitutes an investigative detention, not a custodial interrogation. **See id.** at 1030. We held that a question by police regarding the presence of a weapon is constitutionally permissible, stating that such a question "**unquestionably and completely**" falls on the side of officer safety and such a question "is clearly less intrusive than a request by police to exit the vehicle." **Id.** at 1031 (emphasis in original). Further, we specifically found that such a question "is not of the type that would typically elicit incriminating

statements." *Id.* In holding that the trial court erred in finding that the conditions were so coercive as to create a custodial interrogation, we stated:

> The cause for Appellee's detention was a traffic stop after the police observed Appellee commit a traffic violation. The investigatory traffic stop had not yet concluded when Appellee made his incriminating statement; indeed, Appellee had not yet even produced the requested registration and insurance information. Appellee's detention had, therefore, been relatively brief at the time he made his statement. The location of the detention was in an apartment building parking lot off a public roadway. Appellee had not been transported against his will at the time he made his incriminating statement. Appellee had not been physically restrained. The police did not threaten force. Finally, Detective Love's question was not threatening, demanding, onerous, devious, or characterized by trickery. The question was plain, even-tempered, and to the point. Moreover, as we determined above, Detective Love's question was not one reasonably likely to elicit an incriminating response from Appellee, and thus the question did not constitute an interrogation at all. Even though Appellee's vehicle was blocked by a police car, there was no reason to conclude that Appellee could not have simply walked away or asked the police to move their vehicle at the conclusion of the investigatory stop had Appellee not volunteered his incriminating statement. Finally, it cannot be denied that the restrictive nature of Appellee's encounter with the police paled in comparison to the restrictive nature of the encounter between the pedestrian and police officer that our Supreme Court determined was not a custodial detention in [*Commonwealth v.*] *Pakack*i, [901 A.2d 983, 988 (Pa. 2004)].[5]

_____

[5] In *Pakacki*, a police officer stopped a pedestrian who resembled the description of the suspect in a shooting; asked him if he had any weapons, drugs, or needles; told him that for officer safety reasons he would perform a pat down, and asked the defendant several questions about the shooting. *See Pakacki*, *supra* at 985. During the frisk, the police officer smelled marijuana and felt what he believed to be a marijuana pipe. *See id.* When questioned, the defendant admitted that it was a marijuana pipe. *See id.* Our Supreme Court held that the defendant was not in custody and the
*(Footnote Continued Next Page)*

*Id.* at 1033 (emphasis omitted).

We see little meaningful distinction between the facts in **Clinton** and those in the instant matter. While Officer Goshert ran a check for a gun license in the instant matter, which did not occur in **Clinton**, as discussed above, database checks are constitutionally permissible so long as they do not unreasonably extend the time of the stop. **See Rodriguez**, **supra** at 1615.

Here, although the trial court held that the detention was unduly lengthy, it fails to cite to anything in the record to support this factual finding. (**See** Trial Ct. Op., at 5). Our review of the record demonstrates that there was no testimony at all about the length of the detention. (**See** N.T. Suppression Hearing, 5/01/13, at 4-12). Thus, because the record does not support the trial court's factual finding about the length of the detention, we are not bound by it. **See Henry**, **supra** at 969.

Moreover, given the inherent dangers of a nighttime traffic stop, a check to see if the driver has a permit to own a weapon appears to be precisely the type of *de minimis* invasion of privacy, one that is far less intrusive than asking a driver to exit the vehicle, which the courts have

*(Footnote Continued)* ————————————

officer was not required to give **Miranda** warnings prior to questioning him about the object in his pocket. **See id.** at 988.

- 13 -

previously allowed. *See Rodriguez*, *supra* at 1614-16; *Campbell*, *supra* at 663, *Clinton*, *supra* at 1030.

Further, as in *Clinton*, the traffic stop had not concluded when Appellee made the statement that he possessed a weapon. The location of the detention was a public street in the city of Philadelphia. Appellee had not been transported against his will at the time he made the statement. He had not been physical restrained. The police had not even asked him to exit his vehicle. The police did not threaten force. Officer Thompson's question was not threatening or in any manner devious. There is no indication that Officer Thompson raised his voice or acted in an intimidating manner.

Additionally, as we stated in *Clinton*, a question about whether Appellee possessed a weapon "was not one reasonably likely to elicit an incriminating response from Appellee, and thus . . . did not constitute an interrogation[.]" *Clinton*, *supra* at 1033 (emphasis omitted). While the police parked their vehicle behind Appellee's car, there is nothing in the record to support a conclusion that police would not have permitted him to leave had he not stated that he possessed a weapon. (*See* N.T. Suppression Hearing, 5/01/13, at 5-7). Thus, the trial court's conclusion that the police subjected Appellee to a custodial interrogation requiring the administration of the *Miranda* warnings is neither reasonable nor legally correct. *See Packacki*, *supra* at 988; *Clinton*, *supra* at 1033.

Accordingly, we are constrained to reverse the grant of suppression and remand the matter for further proceedings consistent with this decision.

Order reversed. Case remanded. Jurisdiction relinquished.

Judge Olson files a Concurring Statement.

Judge Lazarus files a Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/17/2015