J-A22027-19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| ESSENCE STEVENS, | : | |
| | : | |
| Appellee | : | No. 881 EDA 2019 |

Appeal from the Order Entered February 15, 2019
in the Court of Common Pleas of Northampton County
Criminal Division at No(s): CP-48-CR-0003574-2018

BEFORE:  MURRAY, J., STRASSBURGER, J.* and PELLEGRINI, J.*

MEMORANDUM BY STRASSBURGER, J.:  **FILED NOVEMBER 20, 2019**

The Commonwealth of Pennsylvania appeals from the February 15, 2019 order granting the omnibus pretrial motion to suppress filed by Essence Stevens (Stevens).[1]  Upon review, we vacate the order and remand for further proceedings consistent with this memorandum.

In September 2018, subsequent to a traffic stop of a vehicle in which Stevens was a passenger, Stevens was charged with possession of a

---

[1] The Commonwealth has the right to appeal the trial court's February 15, 2019 order pursuant to Pa.R.A.P. 311(d), which provides that "[t]he Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution."  In this case, the Commonwealth certified in its notice of appeal that the order granting Stevens's motion to suppress "terminate[s] or substantially handicap[s] the prosecution."  Notice of Appeal, 3/15/2019.

*Retired Senior Judge assigned to the Superior Court.

controlled substance and possession of drug paraphernalia. On January 9, 2019, Stevens filed an omnibus pretrial motion seeking to suppress statements she made to police and physical evidence seized during the traffic stop. Motion to Suppress, 1/9/2019. Specifically, Stevens asserted that suppression was warranted because the stop "was made without probable cause or reasonable suspicion … and was done in violation of [Stevens's] right to be free from unreasonable searches and seizures[,]" and that the subsequent questioning by police "was done in violation of [Stevens's] right to counsel and her right against self[-]incrimination[.]" *Id.* at 1-2 (unnumbered). A hearing on Stevens's motion was held on February 15, 2019. At the hearing, the Commonwealth offered the testimony of police officers Stephen Kunigus and James Connell. We begin with a summary of the facts presented at the suppression hearing.

Officer Kunigus[2] testified that on September 2, 2018, he was on overnight patrol, in uniform, and operating a marked police vehicle. N.T., 2/15/2019, at 7. At approximately 1:00 a.m., Officer Kunigus observed a

---

[2] Officer Kunigus testified that, at the time of the hearing, he had been a police officer for approximately nine years and was the K-9 handler for the Lower Saucon Police Department. N.T., 2/15/2019, at 5. Officer Kunigus testified that his current assignment was a patrol officer, assigned to "patrol through the Township of Lower Saucon. The daily activities [are] answering calls, normal traffic stops, essentially calls for service, and investigations." *Id.* Officer Kunigus estimated that he has made nearly 100 narcotics arrests throughout his career and spent time as a detective on the Northampton County Drug Task Force. *Id.* at 16.

gray colored Pontiac ("the vehicle") pass his location. *Id.* at 8. At the time of this observation, Officer Kunigus was in his patrol car, which was "stationary facing Applebutter Road[,]" surveilling the area. *Id.* at 8-9. Officer Kunigus testified that he observed the vehicle pass him from his right to his left. Officer Kunigus stated that as it passed he "observed the driver," and then "pulled out behind" the vehicle.[3] *Id.* at 9.

Officer Kunigus testified that after pulling out behind the vehicle, he ran the vehicle's registration through Mobile Cop.[4] According to Officer Kunigus, Mobile Cop had indicated that "the owner of the vehicle was currently under suspension." *Id.* at 10. Mobile Cop also gave a description of the vehicle's owner, an approximately 20-year-old female. *Id.* Officer Kunigus testified that the description of the vehicle's owner given by Mobile Cop matched the person Officer Kunigus observed operating the vehicle. *Id.* at 10-11. At that point, Officer Kunigus initiated a traffic stop.

According to Officer Kunigus, the vehicle pulled over immediately and Officer Kunigus proceeded to exit his patrol car and approach the vehicle. *Id.* at 11. Officer Kunigus testified that he "approached the driver['s] side of

---

[3] Because of the positioning of Officer Kunigus's patrol car, as the vehicle passed, the driver's side of the vehicle was the side closer to the officer. *Id.* at 9.

[4] Officer Kunigus explained that "Mobile Cop is a system that is [used] to run license plates or drivers through PennDOT records." *Id.* at 10.

the vehicle and made contact with the driver, and advised her why she was stopped.  At that point she handed [the officer] identification, which matched the same as the owner of the vehicle." *Id.*   Officer Kunigus testified that during his interaction with the driver, he observed two additional occupants, later identified as the driver's mother and Stevens, who was seated in the back of the vehicle. *Id.* at 12.  Upon confirming that the driver's license was suspended, Officer Kunigus requested identification from the other occupants "to see if anybody else ha[d] a valid license to operate the vehicle." *Id.*   The driver's mother and Stevens provided Officer Kunigus identification, who then returned to his patrol car, "and ran everything through dispatch." *Id.*   At that time, Officer Kunigus "requested Officer Connell to assist as backup." *Id.*   Officer Kunigus eventually learned that both the driver's mother and Stevens had suspended licenses, and that Stevens had "prior arrests for narcotics." *Id.* at 13.

Officer Kunigus returned to the vehicle and asked the driver to exit the vehicle. *Id.* at 15.  The driver obliged and Officer Kunigus explained that he was issuing her a citation for driving with a suspended license.  He also inquired about "her travels" that evening. *Id.*   The driver explained that she left a carnival in Bucks County and had eventually gotten lost. *Id.*   Officer Kunigus testified that the driver appeared "slightly nervous," and he found her explanation about her travels "odd" because: (1) she said she had just left a carnival but it was "nearly 1:00[a.m.;]" and (2) "she came from the

east and she[ was] headed back east." *Id.* at 15-16. Officer Kunigus testified that after speaking with the driver, he asked for her permission to speak with the other occupants of the vehicle, "to confirm or basically check [the driver's] story of her whereabouts [that] evening." *Id.* at 17.

Officer Kunigus then made contact with Stevens, asked her to exit the vehicle, and she obliged. Officer Kunigus testified that Stevens appeared "very nervous, like extremely nervous[.]" *Id.* According to Officer Kunigus, Stevens was making "extremely fast movements, couldn't stand still, talking fast." *Id.* Officer Kunigus asked Stevens about her prior narcotics arrests and she confirmed that she had previously been arrested. *Id.* Officer Kunigus stated that based on "her admission to prior drug use" and her "overly-nervous demeanor[,]" he asked Stevens "if she would consent to a search of her person." *Id.* at 18. Officer Kunigus testified that in response to that question, Stevens opened her purse and said, "sure, you can search it."[5] *Id.* According to Officer Kunigus, he observed "a digital scale on the top of the inside of the purse." *Id.* Officer Kunigus testified that on the top of the scale he observed "a white-specked substance." *Id.* Officer Kunigus stated that "through [his] experience and training in narcotic-related

---

[5] Officer Kunigus testified that in conjunction with asking an individual to consent to a search, he typically tells the person that "they can say no to a search. They can stop a search at any time." *Id.* at 18-19. In this case, Officer Kunigus testified that despite informing Stevens of the foregoing, Stevens still proceeded to hand Officer Kunigus her purse. *Id.* at 19.

offenses, [he] observed that the scale is used in conjunction [with] the weighing of narcotics." *Id.* Officer Kunigus then asked Stevens "what her drug of choice was[,]" and she responded "meth." *Id.* at 21

Officer Kunigus testified that at that time, he then "met back with the driver and asked for consent to search the vehicle." *Id.* Officer Kunigus testified that he "explained to the driver basically the fact that, listen, I observed -- had these observations with the scale and prior arrest and overly-nervous behaviors, at this time I would like permission to search the vehicle. You can say no, or you can stop the search at any time." *Id.* Officer Kunigus testified that the driver consented to the search. During the search of the vehicle, Officer Kunigus recovered a "syringe that was sticking partially out of where the back of the seat meets the base of the seat[,] behind the driver where [Stevens] was seated[.]" *Id.* at 21. The syringe was "fully-loaded" with a "clear-type liquid." *Id.* A field test performed by Officer Kunigus confirmed that the substance was methamphetamine. *Id.* at 22. Officer Kunigus testified that the entire interaction lasted about an hour.[6] *Id.* at 30.

---

[6] Officer Kunigus further clarified why the traffic stop lasted as long as it did. Officer Kunigus explained that after confirming the driver, her mother, and Stevens all had suspended licenses, he continued to detain them because "there was no licensed driver to operate the vehicle[,]" and he was allowing "the driver to obtain a lawful driver [to] come get the vehicle while it was off the side of the road." *Id.* at 37. The officer stated "it took an extended
*(Footnote Continued Next Page)*

Next, Officer Connell testified. Officer Connell testified that he was on patrol on September 2, 2018, when he received a request for backup. *Id.* at 39-40. Officer Connell testified that when he arrived at the scene, all three occupants were outside of the vehicle and Officer Kunigus was speaking with Stevens. *Id.* at 40-41. According to Officer Connell, Officer Kunigus was polite and not yelling at Stevens, whom he observed "was acting nervous." *Id.* at 41-42.

At the conclusion of the hearing,[7] the trial court set forth several findings of fact. Pertinent to this appeal, the trial court found that despite observing no violation to the Crimes Code or Motor Vehicle Code, Officer Kunigus

> nonetheless took it upon himself to pull out behind th[e vehicle], in which [Stevens] was a passenger in the rear seat, observe the license plate, and beg[i]n a series of investigative activities to determine the owner of the car and whether or not the owner of the car's license had been suspended.

*Id.* at 53. The trial court concluded that, because Officer Kunigus did not observe any violation "at the time he first observed the car in which

_(Footnote Continued)_ ─────────────

period of time until we could get rides for these people in the middle of nowhere. Obviously, we can't leave them there." *Id.*

[7] The defense did not present any witnesses. Following the testimony of the officers, the Commonwealth and defense counsel presented brief arguments to the Court. In pertinent part, defense counsel argued that based on the time of night and the speed the vehicle was travelling, Officer Kunigus could not have had the requisite reasonable suspicion or probable cause required to stop the vehicle. *Id.* at 44-45.

[Stevens] was a passenger," the officer's investigation and subsequent stop violated Stevens's "rights to be free from unwarranted searches and seizures[.]" *Id.* Based upon the foregoing findings, the trial court granted Stevens's motion to suppress.[8]

This appeal followed.[9] On appeal, the Commonwealth presents one issue for our review: "Whether the trial court erred in granting [Stevens's] motion for suppression as [Officer Kunigus] had reasonable suspicion to effect a traffic stop on the vehicle and the narcotics [and] contraband [Stevens] was charged with possessing was located during consensual searches?" Commonwealth's Brief at 4 (unnecessary capitalization omitted).

> When the Commonwealth appeals from a suppression order, this Court follows a clearly defined scope and standard of review. We consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. This Court must first determine whether the record supports the factual findings of the suppression court and then determine the reasonableness of the inferences and legal conclusions drawn from those findings.

---

[8] Presumably in light of its finding that the traffic stop was unlawful based upon the fact that Officer Kunigus did not observe any violations before it ran the vehicle's license plate, the trial court did not address whether, after determining that the vehicle's owner had a suspended license, Officer Kunigus had reasonable suspicion or probable cause to stop the vehicle. Likewise, the trial court did not address the interactions between Officer Kunigus and Stevens subsequent to the stop.

[9] The Commonwealth complied with the trial court's request to file a concise statement and in response, the trial court submitted an order stating it relied "on the record" and believed "that no further statement is necessary." *See* Order, 4/9/2019. For the reasons set forth *infra*, we do not agree.

*Commonwealth v. Arthur*, 62 A.3d 424, 427 (Pa. Super. 2013) (quotation

marks and citations omitted).

As set forth *supra*, in this case, the trial court found that, because

Officer Kunigus did not observe any violation "at the time he first observed

the car in which [Stevens] was a passenger," the officer's investigation of

the vehicle was unlawful. N.T., 2/15/2019, at 53. In *Commonwealth v.*

*Bolton*, 831 A.2d 734 (Pa. Super. 2003), this Court addressed whether an

officer, while patrolling highways and roads, is required to have any level of

suspicion before running a vehicle registration through a mobile database.

The *Bolton* Court noted that

> [t]wo competing interests guide the formulation of the laws
> governing state agents performing stops of vehicles on the road:
> (1) the Commonwealth's interest in protecting the safety of
> those who travel its highways and roads through the use of
> safety rules and regulations; and (2) the reasonable expectation
> of privacy by the individual.

*Id.* at 736.

With, *inter alia*, the foregoing in mind, this Court rejected Bolton's

contention that

> the charging officer must have some level of suspicion in order
> to run a license plate on the road through the NCIC[10] computer,
> [Bolton] cites no authority to support this contention. Further,
> our review of the case law has found no support for this

---

[10] National Crime Information Center.

argument. Additionally, we fail to see the need for some level of suspicion to check a license plate which is clearly in plain view.

*Id.* at 737.

Pursuant to **Bolton**, we conclude the trial court erred in finding that the traffic stop was unlawful. Officer Kunigus was not required to have any level of suspicion that a violation was occurring prior to deciding to run the vehicle's information through Mobile Cop.

Although we find the trial court erred in determining that the traffic stop was illegal based solely on the fact that Officer Kunigus did not first observe a violation before running the vehicle's registration through Mobile Cop, our inquiry does not end there. We must now determine whether Officer Kunigus had the requisite information needed before initiating a stop of the vehicle. We begin by setting forth the relevant principles of law regarding traffic stops. The authority of a police officer to stop a vehicle is governed by 75 Pa.C.S. § 6308(b), and provides the following:

> Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S. § 6308(b).

> Thus, § 6308(b) requires only reasonable suspicion in support of a stop for the purpose of gathering information necessary to enforce the Vehicle Code violation. However, in [**Commonwealth v. Feczko**, 10 A.3d 1285, 1291 (Pa. Super.

2010) (*en banc*),] this Court held that a police officer must have probable cause to support a vehicle stop where the officer's investigation subsequent to the stop serves no "investigatory purpose relevant to the suspected [Vehicle Code] violation." In **Feczko**, the police officer observed the defendant's vehicle cross over the double yellow median line and the fog line. During the ensuing vehicle stop, the officer noticed the scent of alcohol on the defendant's breath. Importantly, the officer did not testify that the stop was based on suspicion of DUI. The defendant was convicted of DUI and a motor vehicle code violation, and argued on appeal that the vehicle stop was illegal.

This Court noted the distinction between "the investigative potential of a vehicle stop based on a reasonable suspicion of DUI as compared to other suspected violations of the Motor Vehicle Code." **Id.** at 1289 (citing **Commonwealth v. Sands**, 887 A.2d 261, 270 (Pa. Super. 2005)). Whereas a vehicle stop for suspected DUI may lead to further incriminating evidence such as an odor of alcohol or slurred speech, a stop for suspected speeding is unlikely to lead to further evidence relevant to that offense. Therefore:

> [A] vehicle stop based solely on offenses not 'investigatable' cannot be justified by a mere reasonable suspicion, because the purposes of a **Terry** [1] stop do not exist—maintaining the status quo while investigating is inapplicable where there is nothing further to investigate. An officer must have probable cause to make a constitutional vehicle stop for such offenses.
>
> _____
>
> [1] **Terry v. Ohio**, 392 U.S. 1 [] (1968).

**Commonwealth v. Landis**, 89 A.3d 694, 702–03 (Pa. Super. 2014) (some citations omitted).

In this case, because further investigation was required to confirm that the operator of the vehicle was driving with a suspended license, we must determine only whether Officer Kunigus possessed the requisite level of

reliable information at the time of the traffic stop to establish that the officer was acting with reasonable suspicion. In addressing this issue, we find this Court's decision in *Commonwealth v. Hilliar*, 943 A.2d 984 (Pa. Super. 2008), instructive.

In *Hilliar* a police officer on routine patrol,

> ran the defendant's license plate, and determined that the owner of the vehicle's license was under suspension. The officer also discovered the owner's age and that he was a male. From his observation of the driver the officer believed that the defendant was male, and was about the same age as the owner. Based on the officer's conclusion that it was likely that the person operating the vehicle was the owner because he was a male of the same age as the owner and had possession of the owner's vehicle, the police officer decided to stop the vehicle for suspicion of driving on a suspended license.

*Id.* at 987–88. After reviewing the facts and evidence presented, the *Hilliar* Court determined "that under the facts of this case, the officer's suspicion that the driver of the vehicle was also the owner was a reasonable one because the driver matched the description of the owner as a middle[-]aged man." *Id.* at 990. The foregoing reinforces that an officer may not initiate a traffic stop based solely on information that the registered owner of the vehicle has a suspended license. Instead, the officer is required to confirm that the driver of the vehicle, at a minimum, matches the description of the vehicle's owner before making a traffic stop.

In this case, Officer Kunigus testified that based on his location and the direction in which the vehicle was travelling, he was clearly able to see into the vehicle and observe the driver. N.T., 2/15/2019, at 8-11. Officer

- 12 -

Kunigus further testified that the driver of the vehicle matched the description of the vehicle's owner provided by Mobile Cop.[11] Conversely, defense counsel extensively questioned Officer Kunigus on cross-examination about his ability to observe the vehicle's driver, given the lighting conditions and speed of the vehicle, and later argued to the trial court that these factors impeded Officer Kunigus's ability to observe the driver clearly. *Id.* at 24-29, 44-45.

As set forth *supra*, in light of the trial court's findings with respect to Officer Kunigus's initial investigation of the vehicle, the trial court did not make any findings of fact or conclusions of law regarding Officer Kunigus's observations of the driver prior to the stop and whether it found the Officer's testimony credible.[12] "[I]t is well-established that an appellate court does not make findings of fact or conclusions of law." ***Commonwealth v. Grundza***, 819 A.2d 66, 68 (Pa. Super. 2003). As such, we find the trial court's failure to set forth its findings of fact and conclusions of law with

---

[11] In fact, it was later confirmed that the driver was indeed the registered owner of the vehicle.

[12] During argument before this Court, counsel for Stevens stated that the trial court granted Stevens's motion because the court did not believe Officer Kunigus's testimony that he was able to see into the vehicle and observe the driver. We find there is simply nothing in the record to support this assertion. Nor does counsel direct this Court to anything in the record to corroborate this claim. As set forth in greater detail *supra*, the trial court's findings of fact addressed only its belief that Officer Kunigus unlawfully investigated the vehicle without first observing a violation.

respect to whether Officer Kunigus possessed reasonable suspicion to initiate a stop of the vehicle significantly impedes our ability to dispose of this appeal.

In light of the foregoing, we vacate the trial court's order and remand to the trial court for further proceedings. On remand, the trial court is directed to make findings of fact and conclusions of law regarding Officer Kunigus's testimony and whether it finds: (1) Officer Kunigus's testimony credible; and (2) Officer Kunigus had reasonable suspicion to effectuate the stop. If the trial court finds reasonable suspicion existed, it must than set forth its findings regarding the legality of the subsequent interaction between Officer Kunigus and Stevens. The trial court, in its discretion, may make these determinations based on the existing record, or may opt to reopen the record for further testimony. Then, the court shall either reenter the order granting Stevens's motion to suppress or enter a new order denying the motion.

Order vacated. Case Remanded. Jurisdiction Relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/20/19