J. S62043/19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
v. : No. 1124 WDA 2019
:
CHRISTOPHER BATCH :

Appeal from the Order Entered June 21 2019,
in the Court of Common Pleas of Westmoreland County
Criminal Division at No. CP-65-CR-0002188-2018

BEFORE:  PANELLA, P.J., KUNSELMAN, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:  **FILED FEBRUARY 25, 2020**

The Commonwealth appeals[1] from the June 21, 2019 order granting the

***omnibus*** pre-trial suppression motion filed by appellee, Christopher Batch.

After careful review, we reverse the suppression order and remand for

proceedings consistent with this memorandum.

The suppression court summarized the relevant facts of this case, as

gleaned from the suppression hearing transcript, as follows:

> [Pennsylvania State Police] Trooper [Joseph] Lauricia
> testified that at approximately 9:15 p.m. on May 9,
> 2018, he was on his way home driving an unmarked
> police vehicle.  Trooper Lauricia testified that at that
> time, he observed a black Volvo pull up next to him at
> the intersection of Otterman Street and North Main
> Street in Greensburg while Trooper Lauricia was

---

[1] The Commonwealth certified, pursuant to Pa.R.A.P. 311(d), that the trial
court's June 21, 2019 order will terminate or substantially handicap the
prosecution.

stopped at a right [sic] light. Trooper Lauricia testified that as the vehicle pulled next to him, he observed different lights blinking on the dashboard that caught his attention, such as turn signals, four way indicators, hazard lights, and the check engine light. Trooper Lauricia testified that as the vehicle was in the straight lane, the lights that were blinking were either malfunctioning or indicating that something was wrong with the vehicle. Trooper Lauricia testified that he was not dressed in uniform, but rather dressed in a shirt and tie. Trooper Lauricia indicated that the vehicle continued on Otterman Street across Main Street, and Trooper Lauricia followed behind the vehicle to obtain the license plate of the vehicle to call it [in to] dispatch. Trooper Lauricia testified that he continued to follow the vehicle to the intersection of North Pennsylvania Avenue and Otterman Street.

Trooper Lauricia then testified that the vehicle made a right-hand turn on North Pennsylvania Avenue without using a turn signal. Trooper Lauricia indicated that he followed the vehicle as it turned down into a residential neighborhood, and the vehicle continued at a very high rate of speed through the neighborhood, turning multiple times down alleys and other roadways without using a turn signal. Trooper Lauricia testified that that behavior indicated to him that the vehicle was trying to get away from his vehicle so he continued to follow the vehicle while calling for backup. Trooper Lauricia testified that he did not activate his lights to pull the vehicle over until a uniformed officer was present because it was nighttime, he was not in uniform, and he was in an unmarked police vehicle. Trooper Lauricia testified that eventually, the vehicle came to a sudden stop, and he conducted a traffic stop.

On cross-examination, Trooper Lauricia confirmed that he did not observe [appellee] engage in any illegal activity or commit any vehicle code violations at the time he proceeded through the intersection at Otterman Street, and he began to follow him. When questioned by the [suppression c]ourt, Trooper Lauricia testified that by the time the

> information came back with regard to the vehicle's registration, a traffic violation had been committed in his presence.

Suppression court opinion, 6/21/19 at 2-4 (citations to notes of testimony omitted).

Trooper Lauricia testified that during the traffic stop, he detected a strong odor of raw, unburnt marijuana emanating from appellee's vehicle and observed appellee moving things around in the back seat. (Notes of testimony, 2/15/19 at 19-20.) A search of appellee's vehicle by uniformed officers following the traffic stop yielded multiple controlled substances (heroin and cocaine) and two firearms. (*Id.*) Appellee was subsequently arrested and charged with possession with intent to deliver a controlled substance, two counts of possession of a controlled substance, receiving stolen property, unlawful possession of a firearm, firearms not to be carried without a license, and turning movements and required signals.[2] On December 12, 2018, appellee filed an *omnibus* pre-trial motion to suppress the contraband found in his vehicle, arguing that Trooper Lauricia lacked reasonable suspicion to "follow[] him for no apparent reason resulting in the manufacturing of probable cause for the traffic stop." (*See* "Motion for Suppression of Evidence," 12/12/18 at ¶ 11.)

---

[2] 35 P.S. §§ 780-113(a)(30) and (a)(16); 18 Pa.C.S.A. §§ 3925(a), 6105(a)(1), and 6106(a)(1); and 75 Pa.C.S.A. § 3334(a), respectively.

On February 15, 2019, the suppression court conducted a hearing on appellee's suppression motion. Following the hearing, the suppression court granted appellee's suppression motion on June 21, 2019. This timely appeal followed.[3]

The Commonwealth raises the following issues for our review:

> I. Did [Trooper Lauricia] need to have reasonable suspicion of criminal activity to justify following [appellee's] vehicle in order to read its license plate number?
>
> II. Did [Trooper Lauricia] possess probable cause to stop [appellee's] vehicle when [Trooper Lauricia] saw [appellee] make a turn without using a turn signal as required by the vehicle code?

Commonwealth's brief at 4 (extraneous capitalization omitted).

Our standard of review in addressing a suppression court's order granting a suppression motion is well settled.

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are

---

[3] The record reflects that the suppression court ordered the Commonwealth to file a concise statement of errors complained of on appeal, in accordance with Pa.R.A.P. 1925(b), on July 29, 2019. The Commonwealth filed its timely Rule 1925(b) statement on August 1, 2019, and the suppression court filed its Rule 1925(a) opinion on August 6, 2019, indicating that it was incorporating the reasoning set forth in its June 21, 2019 opinion authored in support of its order granting appellee's suppression motion.

not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions.

*Commonwealth v. Korn*, 139 A.3d 249, 253-254 (Pa.Super. 2016) (internal citations and quotation marks omitted), *appeal denied*, 159 A.3d 933 (Pa. 2016).

"Both the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution guarantee individuals freedom from unreasonable searches and seizures." *Commonwealth v. Bostick*, 958 A.2d 543, 550 (Pa.Super. 2008) (citation and internal quotation marks omitted), *appeal denied*, 987 A.2d 158 (Pa. 2009). "To secure the right of citizens to be free from such intrusions, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens to the extent those interactions compromise individual liberty." *Commonwealth v. Reppert*, 814 A.2d 1196, 1201 (Pa.Super. 2002) (citation omitted).

It is well established that:

A police officer has the authority to stop a vehicle when he or she has reasonable suspicion that a violation of the vehicle code has taken place, for the purpose of obtaining necessary information to enforce the provisions of the code. 75 Pa.C.S.[A.] § 6308(b). However, if the violation is such that it requires no

additional investigation, the officer must have probable cause to initiate the stop.

***Commonwealth v. Brown***, 64 A.3d 1101, 1105 (Pa.Super. 2013) (citation omitted), ***appeal denied***, 79 A.3d 1096 (Pa. 2013).

"Reasonable suspicion is a less stringent standard than probable cause necessary to effectuate a warrantless arrest, and depends on the information possessed by police and its degree of reliability in the totality of the circumstances." ***Commonwealth v. Brown***, 996 A.2d 473, 477 (Pa. 2010). Our supreme court has defined probable cause as follows:

> Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the stop, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require only a probability, and not a ***prima facie*** showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.

***Commonwealth v. Martin***, 101 A.3d 706, 721 (Pa. 2014) (citations omitted), ***cert. denied***, ___ U.S. ___, 136 S.Ct. 201 (2015).

In the instant matter, the suppression court authored an opinion in support of its June 21, 2019 suppression order, wherein it concluded that Trooper Lauricia: (1) "did not possess reasonable suspicion of a traffic violation or ***indicia*** of criminal activity to justify following [appellee's] vehicle[;]" and (2) "failed to articulate sufficient facts necessary to establish

reasonable suspicion of a violation of the motor vehicle code [("MVC")] or reasonable suspicion of criminal activity being afoot to effectuate a traffic stop of [appellee's] vehicle[.]" (Suppression court opinion, 6/21/19 at 4.)

Upon review, we find that the suppression court's legal conclusion that Trooper Lauricia needed reasonable suspicion of criminal activity to follow appellee's vehicle and check his license plate is erroneous. A previous panel of this court, citing United States Supreme Court precedent, recognized "that a person traveling in an automobile on public thoroughfares [has] no reasonable expectation of privacy in his movements." *Commonwealth v. Burgos*, 64 A.3d 641, 650 n.7 (Pa.Super. 2013), *appeal denied*, 77 A.3d 635 (Pa. 2013), citing *United States v. Knotts*, 460 U.S. 276, 281 (1983). In *Commonwealth v. Bolton*, 831 A.2d 734 (Pa.Super. 2003), a panel of this court addressed whether a police officer who is patrolling the roadway is required to have any level of suspicion before running a vehicle registration through a mobile database. The *Bolton* court expressly rejected the claim that the "charging officer must have some level of suspicion in order to run a license plate on the road through the NCIC[4] computer," concluding that "we fail to see the need for some level of suspicion to check a license plate which is clearly in plain view." *Id.* at 737.

We acknowledge that Trooper Lauricia testified that he was not on patrol at the time he encountered appellee's vehicle, but was rather returning home

---

[4] National Crime Information Center.

from his shift in an unmarked patrol car and was dressed in a shirt and tie. (**See** notes of testimony, 2/15/19 at 4-5, 7-8.) Nonetheless, this court has recognized that there is no explicit limitation of the authority of a Pennsylvania State Trooper to make a traffic stop **only when** the trooper is on duty and in uniform. **See Commonwealth v. Gommer**, 665 A.2d 1269, 1272 (Pa.Super. 1995) (finding that an off-duty Pennsylvania State Police Corporal who was not in uniform acted within scope of her employment with the state police, and therefore within scope of her legal authority, when she stopped a defendant's vehicle for suspicion of drunk driving), **appeal denied**, 686 A.2d 1308 (Pa. 1996).

Additionally, we find that the record does not support the suppression court's factual finding that Trooper Lauricia failed to articulate sufficient facts necessary to establish an MVC violation sufficient to justify his stop of appellee's vehicle. "Pennsylvania law makes clear that a police officer has probable cause to stop a motor vehicle if the officer observes a traffic code violation, even it if is a minor offense." **Commonwealth v. Calabrese**, 184 A.3d 164, 167 (Pa.Super. 2018) (citation omitted). Here, appellee's vehicle was stopped for failing to use a turn signal, in violation of 75 Pa.C.S.A § 3334, which provides, in pertinent part, as follows:

> **§ 3334.  Turning movements and required signals**
>
> **(a)  General rule.--**Upon a roadway no person shall turn a vehicle or move from one traffic lane to another or enter the

traffic stream from a parked position unless and until the movement can be made with reasonable safety nor without giving an appropriate signal in the manner provided in this section.

**(b)** **Signals on turning and starting.--**At speeds of less than 35 miles per hour, an appropriate signal of intention to turn right or left shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning. The signal shall be given during not less than the last 300 feet at speeds in excess of 35 miles per hour. The signal shall also be given prior to entry of the vehicle into the traffic stream from a parked position.

75 Pa.C.S.A. § 3334(a), (b).

Trooper Lauricia explicitly testified that he observed appellee's vehicle "ma[ke] a right-hand turn on North Pennsylvania [Avenue] without using a turn signal" and continue "at a very high rate of speed through [a residential] neighborhood, turning multiple times down alleys and other roadways without using a signal." (Notes of testimony, 2/15/19 at 5-6.) Accordingly, a traffic stop was warranted in this instance.[5]

---

[5] In reaching this conclusion, we recognize that the testimony at the suppression hearing reflects that Trooper Lauricia did not actually conduct a traffic stop of appellee's vehicle. Trooper Lauricia testified that he did not activate his vehicle's undercover lights until after appellee "stopped suddenly on the side of the road" on his own accord, because he was in an unmarked car and dressed in plainclothes and wanted to await the availability of the uniformed officers he had notified to assist him. (Notes of testimony, 2/15/19 at 6-7.)

Based on the foregoing, we conclude that the suppression court erred in granting appellee's **omnibus** pre-trial suppression motion.

Order reversed. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/25/2020